*No. 24-10448*

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

➤➤◄◄

ANDREW E. ROTH,

*Plaintiff-Appellant,*

*against*

AUSTIN RUSSELL, LUMINAR TECHNOLOGIES, INC.,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court*
*for the Middle District of Florida*
*Honorable John Antoon, II, Senior U.S. District Court Judge*
*Case No. 6:23-cv-00722-JA-RMN*

## BRIEF FOR PLAINTIFF-APPELLANT

Roddy Bisgaard Lanigan
LANIGAN & LANIGAN, PL
831 West Morris Boulevard
Winter Park, Florida 32789
407-740-7379

Glenn F. Ostrager
Joshua S. Broitman
OSTRAGER CHONG FLAHERTY
  & BROITMAN, P.C.
437 Madison Avenue, 24th Floor
New York, New York 10022
212-681-0600

*Attorneys for Plaintiff-Appellant Andrew E. Roth*

 (212) 719-0990
appeals@phpny.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 to 26.1-3, Plaintiff-Appellant Andrew E. Roth certifies that the following alphabetical list of trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations are known or believed to have an actual or potential interest in the outcome of this case or appeal:

1. Broitman, Joshua S. (Counsel for Plaintiff-Appellant)

2. Gomez, Roberto L. (Counsel for Plaintiff-Appellant)

3. Lanigan & Lanigan, PL.

     (Law Firm Counsel for Plaintiff-Appellant)

4. Lanigan, Roddy B.  (Counsel for Plaintiff-Appellant)

5. Luminar Technologies, Inc. (Nominal Defendant-Appellee)

6. Ostrager Chong Flaherty & Broitman P.C.

     (Law Firm Counsel for Plaintiff-Appellant)

7. Ostrager, Glenn F. (Counsel for Plaintiff-Appellant)

8. Roth, Andrew E. (Plaintiff-Appellant)

9. Russell, Austin (Defendant-Appellee)

Plaintiff-Appellant is an individual and thus has no parent corporations or publicly traded corporations to disclose.

i

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Andrew E. Roth ("Roth") respectfully requests that the Court grant oral argument in this appeal of the district court's Order dated October 17, 2023 (D58)[1] and Order dated February 1, 2024 (D71), which hold that Roth failed to establish a cause of action against Defendant-Appellee Austin Russell for violating Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78p(b). Oral argument will assist the Court in reviewing the record and resolving the issues on appeal including the manifest errors of law and fact in the district court's Orders, and, determining how the district court's Orders do injustice to Nominal Defendant-Appellee Luminar Technologies, Inc. ("Luminar") and its shareholders by denying the relief that Roth sought for their benefit.

---

[1] Citations to "D__, [number]" refer to entries on the district court's docket followed by the cited page or paragraph number in that docket entry. Selected portions of the docket are included in the appendix filed with this brief, which is tabbed according to the entries on the docket.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ..................................... i

STATEMENT REGARDING ORAL ARGUMENT ..................................... ii

TABLE OF CONTENTS .................................................................. iii

TABLE OF CITATIONS ................................................................. v

STATEMENT OF JURISDICTION.................................................... 1

STATEMENT OF THE ISSUES ....................................................... 1

STATEMENT OF THE CASE .......................................................... 3

    A.    Nature of the Case ...................................................... 3

    B.    Section 16(b) of the Exchange Act ............................... 4

    C.    The Course of Proceedings and Dispositions
        in the Court Below ..................................................... 5

    D.    Statement of Facts ...................................................... 9

        1.    Russell's Control of Luminar............................. 9

        2.    Russell's Short-Swing Transactions ................... 11

    E.    Standard of Review ..................................................... 12

SUMMARY OF THE ARGUMENT .................................................. 13

ARGUMENT AND CITATIONS OF AUTHORITY ............................... 16

I.    SECTION 16(b) AND RULE 16a-1(a)(2) APPLY
      TO A CONTROLLING SHAREHOLDER'S INDIRECT
      PECUNIARY INTEREST IN ISSUER REPURCHASES.......... 16

      A.    The Term "Beneficial Owner" in Section 16(b)
            Was Intended by Congress to be of Broad Scope............. 17

      B.    The SEC Adopted Rule 16a-1(a)(2) in 1991 to
            Clarify That the Definition of "Beneficial Owner"
            in Section 16(b) Applies to Indirect Interests ................... 19

            1.    As Luminar's Controlling Shareholder,
                  Russell Violated Section 16(b) by
                  Engaging in Short-Swing Trading in
                  Luminar Class A Common Stock............................ 23

            2.    Rule 16a-1(a)(2) Is Consistent With
                  SEC Reporting Regulations and Does
                  Not Unduly Burden Corporate Insiders................... 28

II.   THE DISTRICT COURT'S NARROW CONSTRUCTION
      OF "BENEFICIAL OWNERSHIP" WOULD
      UNDERMINE SECTION 16(b) AND RESULT
      IN MANIFEST INJUSTICE TO ISSUERS ............................... 30

CONCLUSION................................................................................. 32

CERTIFICATE OF COMPLIANCE................................................... 34

CERTIFICATE OF SERVICE ......................................................... 35

# TABLE OF CITATIONS

**Page(s)**

<u>**Cases**</u>

*Am. Dental Ass'n v. Cigna Corp.*
605 F.3d 1283 (11th Cir. 2010) ...................................................... 12

*Auer v. Robbins*
519 U.S. 452 (1997)...................................................................... 30

*Bryant v. Avado Brands, Inc.*
187 F.3d 1271 (11th Cir. 1999) ...................................................... 9

*Chamber of Com. of U.S. v. U.S. Sec. & Exch. Comm'n*
88 F.4th 1115 (5th Cir. 2023) ........................................................ 29

*Conley v. Gibson*
355 U.S. 41 (1957)........................................................................ 12

*Donoghue v. Bulldog Investors Gen. P'ship*
696 F.3d 170 (2d Cir. 2012), *cert. denied*, 569 U.S. 994 (2013) ............... 16

*Feder v. Frost*
220 F.3d 29 (2d Cir. 2000) .................................................... 2, 22, 27

*Foremost-McKesson, Inc. v. Provident Sec. Co.*
423 U.S. 232 (1976)...................................................................... 4

*G.S.W., Inc. v. Long County*
999 F.2d 1508 (11th Cir.1993) ...................................................... 12

*Hishon v. King & Spalding*
467 U.S. 69 (1984)........................................................................ 12

*Kern Cnty. Land Co. v. Occidental Petroleum Corp.*
411 U.S. 582 (1973)............................................................ 7, 15, 22

*Magma Power Co. v. Dow Chem. Co.*
 136 F.3d 316 (2d Cir. 1998) ......................................................... 4, 5

*Maraist v. Coates*
 No. 22-11412, 2023 WL 8643681(11th Cir. Dec. 14, 2023) ....................... 12

*Mercer v. Gupta*
 712 F.3d 756 (2d Cir. 2013), *cert. denied*, 571 U.S. 888 (2013) ............... 27

*Mesocap Ind. Ltd. v. Torm Lines*
 194 F.3d 1342 (11th Cir. 1999) .................................................... 13

*Reliance Electric Co. v. Emerson Elec. Co.*
 404 U.S. 418 (1972)............................................................. 13, 30

*Roth v. Jennings*
 489 F.3d 499 (2d Cir. 2007) ......................................................... 16

*Synalloy Corp. v. Gray*
 816 F. Supp. 963 (D. Del. 1993).................................................... 26

*Thompson v. RelationServe Media, Inc.*
 610 F.3d 628 (11th Cir. 2010) ......................................................... 9

*Whiting v. Dow Chemical Co.*
 523 F.2d 680 (2d Cir. 1975)......................................................... 7, 13

*Whittaker v. Whittaker Corp.*
 639 F.2d 516 (9th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981)............... 7, 13

## **Statutes**

15 U.S.C. 78c(b), Securities Exchange Act of 1934, Section 3(b).................. 7, 14

15 U.S.C. § 78p(b), Securities Exchange Act of 1934, Section 16(b) ........... *passim*

vi

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. §1331 ......................................................................................... 1

**Rules and Regulations**

Fed. R. App. P. 26.1.................................................................................... i

Fed. R. App. 4(a)(1)(A)............................................................................... 1

Fed. R. App. 4(a)(4)(A)(iv) ........................................................................ 1

Fed. R. Civ. P. 12(b)(6)........................................................................... 5, 12

Fed. R. Civ. P. 59(e) .............................................................................. 1, 5

SEC Rule 16a-1(a), 17 CFR 240.16a-1(a) ................................................ 19

SEC Rule 16a-1(a)(1), CFR 240.16a-1(a)(1).................................................. 21

SEC Rule 16a-1(a)(2), 17 CFR 240.16a-1(a)(2).............................................. *passim*

SEC Rule 16a-1(a)(2)(i), 17 CFR 240.16a-1(a)(2)(i) ........................ 18, 24, 26, 28

SEC Rule 16a-1(a)(2)(ii), 17 CFR 240.16a-1(a)(2)(ii)............................... 7, 14, 21

SEC Rule 16a-1(a)(2)(iii), 17 CFR 240.16a-1(a)(2)(iii) ............... 8, 15, 22, 24, 25

SEC Rule 16a-9, 17 CFR § 240.16a-9 ................................................... 29

SEC Rule 16a-11, 17 CFR § 240.16a-11 ................................................ 29

SEC Rule 16b-3, 17 CFR § 240.16b-3 ................................................... 29

SEC Rule 16b-7, 17 CFR § 240.16b-7 ................................................... 29

## Other Authorities

Ownership Reports and Trading by Officers, Directors
and Principal Security Holders, SEC Release No. 34-26333,
53 Fed. Reg. 49997 (Dec. 13, 1988) .......................................... 7, 14, 19, 21, 23, 26

Ownership Reports and Trading by Officers, Directors
and Principal Security Holders, Release No. 34-27148,
54 Fed. Reg. 35667 (Aug. 29, 1989) ................................................................. 21, 25

Ownership Reports and Trading by Officers, Directors
and Principal Security Holders, SEC Release No. 34-28869,
56 Fed. Reg. 7242 (Feb. 21, 1991) ...................................................... 18, 19, 22, 25

Share Repurchase Disclosure Modernization,
Release No. 34-97424, 88 Fed. Reg. 36002 (June 1, 2023) ............................ 28, 29

Brief of the Securities and Exchange Commission
as Amicus Curiae in Response to the Invitation of
the Court, *Feder v. Frost*, 220 F.3d 29 (2d Cir. 2000)
(No. 99-7478), (2000 WL 34003848) ............................................................. *passim*

Jesse M. Fried, *Insider Trading via the Corporation*,
162 U. Pa. L. Rev. 801 (March 2014)..................................................... 19, 31, 32

Jesse M. Fried, *Informed Trading and False Signaling
with Open Market Repurchases*,
93 Calif. L. Rev. 1323, 1346 (October 2005) .................................................. 32

Jesse M. Fried, Testimony on Stock Buybacks Before the
U.S. House of Representatives Subcommittee on Investor Protection,
Entrepreneurship, and Capital Markets (Oct, 17, 2019) available at:
https://democrats-financialservices.house.gov/uploadedfiles/
hhrg-116-ba16-wstate-friedj-20191017.pdf .................................................. 31

Arnold S. Jacobs, *An Analysis of Section 16 of
The Securities Exchange Act of 1934*,
32 N.Y.L. Sch.L.Rev. 209 (1988)............................................................ 6, 13, 17

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction over Plaintiff-Appellant Andrew E. Roth's ("Roth") claim in this case arising under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78p(b) ("Section 16(b)" or "§16(b)") against Defendant-Appellee Austin Russell's ("Russell"). *See* 28 U.S.C. §1331. The district court granted Russell's motion to dismiss Roth's Amended Complaint ("Complaint") in an Order dated October 17, 2023 ("MTD Order") (D58). Roth filed a timely Fed. R. Civ. P. 59(e) motion for reconsideration (D59) of the MTD Order on October 30, 2023, which the district court denied in an Order dated February 1, 2024 ("Final Order") (D71). Roth filed a timely notice of appeal on February 12, 2024  (D72). *See* Fed. R. App. Rule 4(a)(1)(A) and Rule 4(a)(4)(A)(iv).

This Court has appellate jurisdiction under 28 U.S.C. § 1291, which provides that "courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States…."

## STATEMENT OF THE ISSUES

The district court dismissed Roth's shareholder action under Section 16(b), on behalf of Nominal Defendant-Appellee Luminar Technologies, Inc. ("Luminar"), against Russell, Luminar's chief executive officer, controlling

1

shareholder, and director.  (D58, D71).  The Complaint alleges that on July 1, 2021, Russell sold 10.5 million shares of Luminar Class A Common Stock (the "Common Stock") and, within Section 16(b)'s statutory short-swing period, purchased approximately 4.3 million shares of Luminar's Common Stock. Russell's purchases are based on his approximate 28.3% "indirect pecuniary interest" in Luminar's repurchases of 15 million shares of its Common Stock in December 2021 ("Luminar's Repurchases").  *See* SEC Rule 16a-1(a)(2), 17 C.F.R. 240.16a-1(a)(2) ("Rule 16a-1(a)(2)").  Matching Russell's sales with his indirect pecuniary interest in Luminar's Repurchases results in short-swing profits of approximately $23 million that are disgorgeable under Section 16(b) to Luminar (D11, ¶¶ 4, 9-15).

The district court held that a controlling corporate insider like Russell does not have an "indirect pecuniary interest" under Rule 16a-1(a)(2) in issuer repurchases.  The district court thus concluded that imputing liability to Section 16(b) insiders like Russell based on the insider's indirect pecuniary interest in issuer repurchases of its common stock is contrary to Section 16(b).  (D58, pp. 8-11).  In so holding, the district court found that the Securities Exchange Commission's ("SEC") construction of Rule 16a-1(a)(2) in its brief as Amicus Curiae in Response to the Invitation of the Court in *Feder v. Frost,* 220 F.3d 29 (2d Cir. 2000) (No. 99-7478), 2000 WL 34003848 ("SEC Amicus Brief") (D49-10),

2

which clarifies that a controlling stockholder's "indirect pecuniary interests" are sufficient to establish the potential for short-swing profits recoverable under Section 16(b), is distinguishable from facts in the present case.  (D58, pp. 11-13).

The issues on appeal are:

1.      Whether Russell, the chief executive officer, controlling stockholder and a director of Luminar, is subject to the short-swing recapture provisions of Section 16(b) by selling Luminar shares and, within six months, purchasing shares indirectly through the company's share repurchases?

2.      Whether the district court misconstrued Rule 16a-1(a)(2) in determining that a corporate insider does not have "beneficial ownership", measured by his proportionate ownership of an issuer's outstanding shares, in common stock an issuer repurchases, where the insider has a substantial ownership interest in the issuer and a controlling influence over the issuer repurchases?

## STATEMENT OF THE CASE

### A.    Nature of the Case

This is an action brought by Roth, an owner of Luminar Common Stock, on behalf of and for the benefit of Luminar, alleging claims under Section 16(b) against Russell, the chief executive officer, controlling shareholder, and director of Luminar.  The Complaint alleges that Russell realized short-swing profit in violation of Section 16(b) resulting from his market sale of 10.5 million shares of

3

Luminar Common Stock matched with Russell's beneficial ownership in

Luminar's Repurchases of 15 million shares of its Common Stock within the

statutory six-month period.  (D11, ¶¶ 1-4, 9-13).  Rule 16a-1(a)(2) defines

"beneficial owner" under Section 16(b) in terms of "pecuniary interest" in the

equity securities of an issuer.  Russell had an approximate 28.3% indirect

pecuniary interest in Luminar's Repurchases and therefore realized approximately

$23 million in short-swing profits that are disgorgeable to Luminar.  (D11, ¶¶ 14-

15).

**B.    Section 16(b) of the Exchange Act**

Section 16(b) provides that,

> [f]or the purpose of preventing the unfair use of information
> which may have been obtained by [a] beneficial owner, director, or
> officer by reason of his relationship to the issuer, any profit realized
> by him from any purchase and sale, or sale and purchase, of any
> equity security of such issuer . . . within any period of less than six
> months . . . shall inure to and be recoverable by the issuer, irrespective
> of any intention on the part of such beneficial owner, director, or
> officer in entering into such transaction . . . .

15 U.S.C. § 78p(b).  "No showing of actual misuse of inside information or of

unlawful intent is necessary to compel disgorgement." *Magma Power Co. v. Dow

Chem. Co.*, 136 F.3d 316, 320 (2d Cir. 1998) (citing *Foremost-McKesson, Inc. v.

Provident Sec. Co.*, 423 U.S. 232, 251 (1976)).  Instead, Section 16(b) "operates

mechanically, and makes no moral distinctions, penalizing technical violators of

pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition. *Id.*
at 320-21.

## C.    The Course of Proceedings and Dispositions in the Court Below

On April 20, 2023, Roth filed a Complaint with the district court.  (D1).
Roth subsequently filed an Amended/Corrected Complaint on May 3, 2023, to
correct the case caption.  (D11).  On July 21, 2023, Russell filed a motion under
Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint on grounds that short-swing
profits resulting from a controlling shareholder's indirect pecuniary interest in
corporate repurchases are not comprehended within the language or the purpose of
Section 16(b) and on the further ground that Russell did not realize any short-
swing profits (D39).  Roth filed his opposition on August 25, 2023.  (D47).

The district court, in the MTD Order dated October 17, 2023, granted
Russell's motion to dismiss the Complaint for failure to state a cause of action
under Section 16(b) holding that imputing liability to Section 16(b) insiders for
issuer repurchases is contrary to the statute.[2]  (D58).  Roth filed a motion  pursuant
to Fed. R. Civ. P. 59(e), for reconsideration of the MTD Order.  (D59).  In the Final

---

[2] With regard to Russell's second argument, the District Court found that Roth's
Complaint sufficiently alleged that Russell realized short-swing profits.  (D58, p. 7,
note 3).  Russell did not appeal this issue.

Order dated February 1, 2024, the district court denied Roth's motion for reconsideration. (D71).

The district court rejected Roth's argument that a director, chief executive officer, and controlling stockholder (Russell) with approximately 80% of the voting power of Luminar's outstanding Common Stock is subject to the short-swing profit provisions of Section 16(b) resulting from his market sales of Luminar Common Stock matched with his indirect pecuniary interest in Luminar's subsequent repurchases of the Company's Common Stock. (D58, pp. 8-11; Rule 16a-1(a)(2)).

The district court erred in holding that Russell was not a "**beneficial owner**" for purposes of Section 16(b) of his proportionate interest in the shares repurchased by Luminar. The Congressional purpose underlying Section 16(b) was to broadly define the term "beneficial owner" in the statute. Arnold S. Jacobs, *An Analysis of Section 16 of The Securities Exchange Act of* 1934, 32 N.Y.L. Sch.L.Rev. 209, 225 (1988). The district court's decision is contrary to long standing case law, codified in Rule 16a-1(a)(2), which clarifies that a controlling stockholder's "indirect pecuniary interests"—like Russell's indirect pecuniary interest in Luminar's Repurchases—is sufficient to establish the potential for short-swing profits recoverable under Section 16(b). *See* SEC Amicus Brief, p. 16, n. 13 (citing

*Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981); *Whiting v. Dow Chemical Co.*, 523 F.2d 680 (2d Cir. 1975).

Congress expressly authorized the SEC to adopt rules defining terms in the Exchange Act.  Section 3(b) of the Exchange Act (15 U.S.C. § 78c(b)).  The SEC adopted Rule 16a-1(a)(2) to define "beneficial owner" as used in Section 16(b) in terms of "pecuniary interest" and explained that the Rule was adopted because of the "[u]ncertainty as to the status of indirect interests in securities of the issuer." *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, SEC Release No. 34-26333, 53 Fed. Reg. 49997, 50001 (Dec. 13, 1988) ("Proposing Release") (D49-8); SEC Amicus Brief at p. 14.  Rule 16a-1(a)(2) clarifies that a controlling stockholder's "indirect pecuniary interests" are sufficient to establish the potential for short-swing profits recoverable under Section 16(b).

The district court misconstrued the SEC Amicus Brief and its construction of SEC Rule 16a-1(a)(2)(ii), 17 C.F.R. 240.16a-1(a)(2)(ii) which defines the standard for determining when an insider has an "indirect pecuniary interest", providing a *non-exclusive list* of interests that constitute an "indirect pecuniary interest" for Section 16(b) purposes.  Under SEC Rule 16a-1(a)(2)(ii), Russell has an indirect pecuniary interest in Luminar's Repurchases if his short-swing transactions implicate the purposes of Section 16(b) – the abuse of inside information by insiders.  *See Kern County Land Co.*, 411 U.S. 582, 594 (1973).  SEC Amicus

Brief., p. 22.   The SEC Amicus Brief instructs that this determination must be "analyzed by reference to relevant principles that may be derived from the statutory purpose, other portions of the rule and from case law".  SEC Amicus Brief, p. 19.

SEC Rule 16a-1(a)(2)(iii), 17 C.F.R. 240.16a-1(a)(2)(iii) provides a safe harbor excluding from the "pecuniary interest" definition indirect interests of shareholders who do not have investment control over a corporation's portfolio securities (i.e., investments in other corporations).  The safe harbor does not apply to Russell's indirect interests in Luminar's Repurchases because they are not portfolio holdings, but the safe harbor is consistent with interpreting Rule 16a-1(a)(2)'s definition of pecuniary interest to apply to a controlling shareholder's interest in issuer repurchases by a corporation in which the insider has a substantial ownership interest and a controlling influence unless he can show that in fact he could not have caused or prevented the securities transactions.  SEC Amicus Brief, pp. 11-19 and 21-22.  Whether Russell's status as controlling shareholder gave him the ability to cause or prevent Luminar's Repurchases presents fact issues that should not be determined on a motion to dismiss.

8

**D.    Statement of the Facts**

**1.    Russell's Control of Luminar**

Luminar is an automotive technology company incorporated in Delaware. (D49-1, p. 11/58; D11, ¶ 2).  Russell is Luminar's founder and has served as its President, Chief Executive Officer, Chairperson, and member of its board since December 2020.  (D49-1, p. 2; D49-2. P. 8; D11, ¶¶ 4, 11).  Russell is also a controlling shareholder of Luminar.  *Id*.  Luminar's SEC filings disclose that Russell maintained voting control when the alleged matchable purchases and sales were made—specifically, Russell held approximately 81.8% of the voting power of Luminar's outstanding capital stock as of April 13, 2021 (D49-3, p. 37), 79.3% as of July 1, 2021 (D49-4, p. 36), and approximately 79.5% as of December 31, 2021 (D49-2, p. 32).  See D71, p. 6 (district court acknowledged that Russell controlled Luminar).

Luminar also regularly disclosed in its SEC filings that its dual class structure for its Common Stock gives Russell control of Luminar, including control over the election of directors and sale of Luminar's assets. [3]

---

[3] Roth filed an unopposed Request for Judicial Notice (D48) of SEC filings by Russell and Luminar.  In reviewing the dismissal of a complaint alleging violations of securities laws, this Court may take judicial notice of relevant SEC filings. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 at note 5 (11th Cir. 2010), citing, *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999).

***The dual class structure of our Common Stock has the effect of concentrating voting control with Austin Russell, our Founder, President and Chief Executive Officer. This will limit or preclude your ability to influence corporate matters, including the outcome of important transactions, including a change in control.***

Shares of our Class B common stock, $0.0001 par value per share ("Class B common stock"), have 10 votes per share, while shares of Class A common stock have one vote per share. Austin Russell, our Founder, President and Chief Executive Officer, holds all of the issued and outstanding shares of Class B common stock. Accordingly, Mr. Russell held approximately 81.8% of the voting power of our outstanding capital stock as of April 13, 2021 and controls matters submitted to our shareholders for approval, including the election of directors, amendments of our organizational documents and any merger, consolidation, sale of all or substantially all of our assets or other major corporate transactions.…

(D49-3, p. 37. *See also*, D49- 2, p. 32, D49-4, p. 36, and D49-5, p. 31).

Russell's control of Luminar also makes Luminar a controlled company under the Nasdaq rules that is exempt from certain corporate governance requirements including that its board have a majority of independent directors.

Austin Russell controls a majority of the voting power of our outstanding capital stock. As a result, we are a "controlled company" under the Nasdaq Stock Market rules. As a controlled company, we are exempt from certain Nasdaq corporate governance requirements, including those that would otherwise require our Board to have a majority of independent directors and require that we establish a compensation committee comprised entirely of independent directors, or otherwise ensure that the compensation of our executive officers and nominees for directors are determined or recommended to our

---

10

Board by the independent members of our Board. While we do not currently intend to rely on any of these exemptions, we will be entitled to do so for as long as we are considered a "controlled company,"….

D49-3 at 37. *See also*, D49- 4 at 36, D49-2 at 32-33, and D49-5 at 32.

Finally, Luminar acknowledged that it is "highly dependent" on Russell's services to the company:

> We are highly dependent on Austin Russell, our Founder, President and Chief Executive Officer. Mr. Russell created our first lidar product and he remains deeply involved in all aspects of our business, including product development. The loss of Mr. Russell would adversely affect our business because his loss could make it more difficult to, among other things, compete with other market participants, manage our R&D activities and retain existing customers or cultivate new ones. Negative public perception of, or negative news related to, Mr. Russell may adversely affect our brand, relationship with customers or standing in the industry.

D49-3 at 25. *See also*, D49-4 at 24, D49-2 at 24, and D49-5 at 22.

### 2.    Russell's Short-Swing Transactions

On July 1, 2021, Russell sold 10,500,000 shares of Luminar's Common Stock at a price per share of $21. (D49-6; D11, ¶ 9). Less than six months later, Luminar reported that in December 2021 it repurchased 15,263,761 shares of Common Stock at an average price of $15.45. (D49-2, p. 39; D11, ¶ 10). Russell had an approximate 28.3% indirect pecuniary interest in Luminar's Repurchases. (D49-7, p. 3/8; D11, ¶ 14). Accordingly, out of 15,263,761 shares repurchased,

11

Russell had an indirect pecuniary interest in 4,319,644 shares (i.e., 28.3% of all shares repurchased).  (D11, ¶ 14).

Russell's indirect pecuniary interest of 4,319,644 shares of the shares repurchased can be matched with 4,319,644 shares of the shares sold by Russell. Section 16(b), Rule 16a-1(a)(2).  Multiplying the matched shares times the profit per share (i.e., the $5.55 price difference between Russell's $21 sale price and the Company's average repurchase price of $15.45), results in short-swing profits of $23,974,026.21, which are disgorgeable to Luminar.  (D11, ¶¶ 15, 19).

## E.    Standard of Review

This Court "review[s] *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim…." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  "In our review, we accept the allegations in the amended complaint as true and construe them in the light most favorable to the plaintiff." *Maraist v. Coates*, No. 22-11412, 2023 WL 8643681 at *6 (11th Cir. Dec. 14, 2023), citing, *Am. Dental Ass'n*, 605 F.3d at 1288.

> In reviewing an order granting a motion to dismiss, the appellate court must accept the factual allegations of the complaint as true and may affirm the dismissal of the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, 65 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, 85–86 (1957). The Appellate Court reviews the District Court's legal conclusions de novo. *G.S.W., Inc. v. Long County,* 999 F.2d 1508 (11th Cir.1993).

12

*Mesocap Ind. Ltd. v. Torm Lines*, 194 F.3d 1342, 1343 (11th Cir. 1999).

## SUMMARY OF THE ARGUMENT

The district court held that imputing liability to Section 16(b) insiders–like Russell–for issuer repurchases is contrary to the statute and SEC regulations. The district court erred in holding that Russell was not a "**beneficial owner**" for purposes of Section 16(b) of his proportionate interest in Luminar's Repurchases. (D58, pp. 8-12). The Congressional purpose underlying Section 16(b) was to broadly define the term "beneficial owner" in the statute to curb short-swing speculation by corporate insiders. Jacobs, 32 N.Y.L. Sch.L.Rev. at 225; *Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 424 (1972). The district court's decision is contrary to long-standing case law, codified in Rule 16a-1(a)(2), which clarifies that a controlling stockholder's "indirect pecuniary interests"—like Russell's indirect pecuniary interests in Luminar's Repurchases—are sufficient to establish the potential for short-swing profits recoverable under Section 16(b). *See* SEC Amicus Brief, p. 16, n. 13 (citing *Whittaker* and *Whiting*). There is no basis under Section 16(b) or Rule 16a-1(a)(2) to exclude a controlling stockholder's indirect interest in a company's transactions because the company is the issuer of the shares repurchased.

13

In Section 3(b) of the Exchange Act Congress expressly authorized the SEC to adopt rules defining terms in the Exchange Act. (15 U.S.C. § 78c(b)).  The SEC adopted Rule 16a-1(a)(2) to define "beneficial owner" as used in Section 16(b) in terms of "pecuniary interest" and explained that the Rule was adopted because of the "[u]ncertainty as to the status of indirect interests in securities of the issuer." *See* Proposing Release, 53 Fed. Reg. at 50001; SEC Amicus Brief at p. 14.  Rule 16a-1(a)(2) clarifies that a controlling stockholder's "indirect pecuniary interests" are sufficient to establish the potential for short-swing profits recoverable under Section 16(b).

The district court misconstrued the SEC Amicus Brief and its construction of SEC Rule 16a-1(a)(2)(ii) which define the standard for determining when an insider has an "indirect pecuniary interest", providing a *non-exclusive list* of interests that constitute an "indirect pecuniary interest" for Section 16(b) purposes. Rule 16a-1(a)(2)(ii) does not prescribe the "circumstances," as presented here, in which a shareholder (Russell) shall be deemed to have an indirect pecuniary interest in shares repurchased by a corporation (Luminar); nor does it prevent such a circumstance.  *See* SEC Amicus Brief., p. 19.  "Whether or not a pecuniary interest exists <u>in other circumstances</u> … must be analyzed by reference to relevant principles that may be derived from the statutory purpose, other portions of the rule and from case law…." *Id*. (underlining added) That determination must consider

14

whether a transaction implicates the purposes of Section 16(b) – the abuse of inside information by insiders. *See Kern County Land Co.*, 411 U.S. at 594. SEC Amicus Brief., p. 22.

SEC Rule 16a-1(a)(2)(iii) provides a safe harbor excluding from the "pecuniary interest" definition indirect interests of shareholders who do not have investment control over a corporation's portfolio securities (i.e., investments in other corporations). The safe harbor does not apply to Russell's indirect pecuniary interests in Luminar's Repurchases because they are not portfolio holdings, but the safe harbor is consistent with interpreting Rule 16a-1(a)(2)'s definition of pecuniary interest to apply to a controlling shareholder's interest in issuer repurchases by a corporation in which the insider has a substantial ownership interest and a controlling influence unless he can show that in fact he could not have caused or prevented the securities transactions. SEC Amicus Brief, pp. 11-19 and 21-22. Whether Russell's status as controlling shareholder gave him the ability to cause or prevent Luminar's Repurchases presents fact issues that should not be determined on a motion to dismiss.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    **SECTION 16(b) AND RULE 16a-1(a)(2) APPLY TO A CONTROLLING SHAREHOLDER'S INDIRECT PECUNIARY INTEREST IN ISSUER REPURCHASES**

Section 16(b) provides that if an officer, director, or a <u>beneficial owner</u> of more than 10 percent of a class of equity securities of an issuer ("Statutory Insiders"), purchases and sells, or sells and purchases, shares of any equity security of such issuer within a period of less than six months, any profits arising from those transactions are recoverable by the issuer or by a shareholder suing derivatively on its behalf. *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 173-74 (2d Cir. 2012), *cert. denied*, 569 U.S. 994 (2013); *Roth v. Jennings*, 489 F.3d 499, 506 (2d Cir. 2007).

The Complaint alleges that Russell is a Statutory Insider subject to the short-swing profit provisions of Section 16(b) resulting from his market sales of 10.5 million shares of Luminar's Common Stock in July 2021, matched with Russell's approximate 28.3% indirect pecuniary interest in Luminar's Repurchases in December 2021, within the statutory six-month period.  (D11, pp. 4, 9-15).  Rule 16a-1(a)(2).

The district court held that Russell is not a "**beneficial owner**", as defined in Section 16(b), of Luminar's Repurchases and, therefore the Complaint fails to state a cause of action.  (D58, p. 9-13).  However, Rule 16a-1(a)(2) explicitly provides

16

that for purposes of determining liability under Section 16(b), persons subject to the statute are "beneficial owners" of securities in which they have a direct or indirect "pecuniary interest". Here, Russell has an indirect pecuniary interest in Luminar's Repurchases resulting from Russell's status as Luminar's controlling stockholder and measured by his approximate 28.3% ownership of Luminar's Common Stock. (D11, pp. 4, 14). The district court's contention that subjecting an insider's indirect interests in company repurchases to Section 16(b) liability would expand the reach of the statute overlooks the literal language of Section 16(b), Rule 16a-1(a)(2), the SEC Amicus Brief, and U.S. Supreme Court precedents for determining when a transaction is subject to Section 16(b).

## A.    The Term "Beneficial Owner" in Section 16(b) Was Intended by Congress to be of Broad Scope

The congressional purpose underlying Section 16(b) was to broadly define the term "beneficial owner" in the statute. Jacobs, 32 N.Y.L. Sch. L Rev. at 225. The district court held that construing Section 16(b) and Rule 16a-1(a)(2) to extend to a controlling shareholder's indirect pecuniary interest in company repurchases would improperly expand the reach of the statute. (D58, pp. 9-11). The district court misconstrued the statute. Nothing in the plain language of Section 16(b) directs or even suggests that the term "beneficial owner" does not extend to a controlling shareholder's indirect pecuniary interest in issuer repurchases.

17

Pursuant to its authority under Section 3(b) of the Exchange Act, the SEC adopted Rule 16a-1(a)(2) to define "beneficial owner" as used in Section 16(b) in terms of "pecuniary interest" and explained that Rule 16a-1(a)(2) was adopted because of the "[u]ncertainty as to the status of indirect interests in securities of the issuer." SEC Amicus Brief., p. 14.

Rule 16a-1(a)(2) provides that a statutory insider may be liable for short-swing profits arising from indirect pecuniary interests. There is nothing in Rule 16a-1(a)(2) or in its adopting release, *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, SEC Release No. 34-28869, 56 Fed. Reg. 7242, 7265 (Feb. 21, 1991) ("Adopting Release") (D49-9), that provides an exception for an insider's indirect interest in purchases by the issuer of which a person is a controlling shareholder. Nor is there any reason for such an exception. A controlling stockholder may misuse inside information by causing the issuer to repurchase shares, thereby increasing the insider's percentage ownership in the issuer, and reaping short-swing profits by selling his shares at a higher price. This is precisely the kind of abusive conduct that Section 16(b) was designed to prevent.

SEC Rule 16a-1(a)(2)(i) defines pecuniary interest as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." Here, Luminar's Repurchases constitute a "transaction" and Russell indirectly derived a profit from the short-swing transactions based

18

upon the percentage increase in his ownership of Luminar resulting from the reduction in outstanding shares after Luminar's Repurchases.  For purposes of speculative abuse, there is little difference between Russell purchasing shares indirectly through Luminar's Repurchases as opposed to engaging in direct purchases of shares.  In both cases, Russell's economic interest in the company increases.  *See* Jesse M. Fried, *Insider Trading via the Corporation*, 162 U. Pa. L. Rev. 801, 811-820 (March 2014).

### B.    The SEC Adopted Rule 16a-1(a)(2) in 1991 to Clarify That the Definition of "Beneficial Owner" in Section 16(b) Applies to Indirect Interests

In 1988, the SEC proposed rules to clarify the definition of  "beneficial owner" in part because of the "[u]ncertainty as to the status of <u>indirect interests in securities of the issuer</u>" and to "codify the courts' emphasis on pecuniary interests and deem that indirect pecuniary interests are sufficient to establish a reporting obligation and the potential for short-swing profit recovery with respect to those securities."[4]  In 1991, the SEC adopted two definitions of "beneficial owner" in SEC Rule 16a-1(a):[5]

---

[4] Proposing Release, 53 Fed. Reg. at 50001 (underlining added).
[5] Adopting Release, 56 Fed. Reg. at 7265-7266.

The term beneficial owner shall have the following applications:

(1) Solely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act, the term "beneficial owner" shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder….

(2) Other than for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered under Section 12 of the Act, the term beneficial owner shall mean any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities, subject to the following:

   (i)  The term pecuniary interest in any class of equity securities shall mean the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities.

   (ii) The term **indirect pecuniary interest** in any class of equity securities **shall include, but not be limited to**:

      (A)  Securities held by members of a person's immediate family sharing the same household; provided, however, that the presumption of such beneficial ownership may be rebutted; see also § 240.16a–1(a)(4);

                              * * *

      (F)  A person's right to acquire equity securities through the exercise or conversion of any derivative security, whether or not presently exercisable.

The SEC explained the difference between the definitions in its 1989

reproposing release leading to adoption of revisions to its Section 16 rules in 1991:

Once it has been determined that a person is a ten percent holder, or that a person is otherwise subject to Section 16 as a director or officer [under SEC Rule 16a-1(a)(1)], *the pecuniary interest definition of beneficial owner* [under Rule 16a-1(a)(2)] *determines* what securities holdings and transactions must be reported and *which transactions are subject to short-swing profit liability*.  This analysis is wholly independent and separate from the analysis determining ten percent holder status.

Under the definition, as originally proposed and as reproposed, *an insider beneficially owns all shares in which the insider holds a direct or indirect pecuniary interest*.  *Indirect pecuniary interest represents the insider's ability to profit from purchases and sales in securities held by* family members, or through derivative securities, partnerships, *corporations*, trusts and "other arrangements."

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Release No. 34-27148, 54 Fed. Reg. 35667, 35670-35671 (Aug. 29, 1989) [emphasis added] (the "**Reproposing Release***").  See also* Proposing Release, 53 Fed. Reg. at 50001 (the "pecuniary interest test" of Rule 16a-1(a)(2) "deem[s] that indirect pecuniary interests are sufficient to establish a reporting obligation and the potential for short-swing profit recovery with respect to those securities").

SEC Rule 16a-1(a)(2)(ii) provides a *non-exclusive list* of interests that constitute indirect pecuniary interests for Section 16(b) purposes.  The Rule does not prescribe the circumstance, as presented here, in which an insider (Russell) shall be deemed to have an indirect pecuniary interest in the securities of a

corporation (Luminar) in which the insider is a shareholder; nor does it prevent

such a circumstance.  Instead, the SEC in *Feder* instructs that:

> [w]hether or not a pecuniary interest exists <u>in other circumstances</u> …
> must be analyzed by reference to relevant principles that may be
> derived from the statutory purpose, other portions of the rule and from
> case law….

SEC Amicus Brief., p. 19 (underlining added).  This determination must consider

whether a transaction implicates the purposes of Section 16(b) – the abuse of inside

information by insiders.  *See Kern County Land Co.*, 411 U.S. at 594 (when

determining if a transaction should be deemed a Section 16(b) purchase or sale,

courts inquire whether the transaction may serve as a vehicle for the evil which

Congress sought to prevent).  SEC Amicus Brief., p. 22.[6]

Because Russell is a controlling shareholder with the ability to control

Luminar's Repurchases[7], the statutory purpose of Section 16(b), other portions of

Rule 16a-1(a)(2) (i.e., SEC Rule 16a-1(a)(2)(iii)), case law and SEC guidance all

compel the conclusion that Russell had an indirect interest in Luminar's

---

[6] The SEC acknowledged in the Adopting Release that by including "indirect" pecuniary interest in Rule 16a-1(a)(2), the Rule goes beyond most judicial decisions prior to the 1991 adoption of the Rule.  SEC Amicus Brief., p. 17 n. 14.
[7] In the Adopting Release, the SEC defined a "controlling shareholder" as a shareholder, like Russell, that has the power to exercise control over a corporation by virtue of his securities holdings.  Adopting Release, 56 Fed. Reg. at 7245, n. 49; SEC Amicus Brief. p. 18.

Repurchases unless Russell can establish that he could not have caused or

prevented Luminar's Repurchases.  SEC Amicus Brief, pp. 11-19.

### 1. As Luminar's Controlling Shareholder, Russell Violated Section 16(b) by Engaging in Short-Swing Trading in Luminar Class A Common Stock

There is no authority to support the district court's position that Russell did

not have a beneficial ownership interest in Luminar's Repurchases and is not

subject to Section 16(b) liability.  (D58, pp. 9-13).  The district court's position

ignores that one of the SEC's overriding purposes in adopting Rule 16a-1(a)(2)

was to clarify the application of Section 16(b) to indirect interests.  The SEC's

Proposing Release explained that "[u]ncertainty as to the status of indirect interests

in securities of the issuer… has raised requests for a definition." Proposing

Release, 53 Fed. Reg. 49997 at 50001.

The district court's reading of Rule 16a-1(a)(2) also radically deviates from

the Rule's text.  Rule 16a-1(a)(2) provides an expansive definition of the term

"pecuniary interest" and a <u>non-exclusive</u> list of interests that constitute "indirect

pecuniary interests" for purposes of the Rule.  The list of indirect pecuniary

interests does not address indirect interests arising from a stockholder's ownership

of shares of a corporation, because the determination of "[w]hether or not a

pecuniary interest exists in other circumstances … must be analyzed by reference

to relevant principles that may be derived from the statutory purpose, other portions of the rule and from case law."  SEC Amicus Brief., p. 19.

The Rule does not make any distinction between whether such indirect interests may arise from ownership of shares in the issuer or of an entity other than the issuer, except to provide a safe harbor that a shareholder is not deemed to have a pecuniary interest in portfolio securities (i.e., investments in other corporations) if the shareholder is not a controlling shareholder and does not have or share investment control over the entity's portfolio:

> A shareholder may not be deemed to have a pecuniary interest in the portfolio securities held by a corporation or similar entity in which the person owns securities if the shareholder is not a controlling shareholder and does not have or share investment control over the entity's portfolio.

SEC Rule 16a-1(a)(2)(iii).

The fact that the safe harbor only addresses a shareholder's indirect interests in the portfolio securities of a corporation or similar entity in no way precludes the determination that a shareholder may have an indirect pecuniary interest in transactions by an issuer in its own shares.  Rather, that determination must be made based on the definition of the term "pecuniary interest" – i.e., whether the shareholder has "the opportunity, directly or indirectly, to profit or share in any profit derived from [the] transaction" (SEC Rule 16a-1(a)(2)(i)) and "analyzed by reference to relevant principles that may be derived from the statutory purpose,

24

other portions of the rule and from case law." SEC Amicus Brief, p. 19. If the SEC had intended to limit SEC Rule 16a-1(a)(2)(iii) to cover only portfolio securities and to exclude indirect pecuniary interests in transactions by the issuer, the SEC would have done so. Instead, the SEC adopted an expansive definition for direct and indirect pecuniary interests.

Indeed, the safe harbor, which focuses on "control" in determining whether a shareholder has an indirect pecuniary in a corporation's transactions, is consistent with interpreting Rule 16a-1(a)(2)'s definition of pecuniary interest to apply to a controlling shareholder's interest in issuer repurchases <u>unless</u> the controlling shareholder can prove that it could not have caused or prevented the issuer repurchases.[8] *See* SEC Amicus Brief, pp. 10, 19-24.

Whether a controlling shareholder has an indirect pecuniary interest in issuer repurchases ultimately depends on whether the controlling shareholder has "an opportunity, directly or indirectly, to profit or share in any profit derived from a

---

[8] Rule 16a-1(a)(2) is a principles-based rule that covers all indirect pecuniary interests. The safe harbor for portfolio securities was not included in the Proposing Release and was added by the SEC at the request of commenters. Reproposing Release, 54 Fed. Reg. at 35672 and Adopting Release, 56 Fed. Reg. at 7245. The Reproposing Release explains that SEC Rule 16a-1(a)(2) does not prescribe the circumstances where an indirect interest constitutes an "indirect pecuniary interest," and "courts [have] flexibility in applying Section 16 to situations where corporate holdings are involved." Reproposing Release, 54 Fed. Reg. 35672.

transaction in the subject securities." SEC Rule 16a-1(a)(2)(i).  The SEC stated in

its Amicus Brief that such a determination should consider the statutory purpose,

"other portions of the rule and … case law, to the extent that it has not been

superseded by the 1991 rules."  *See* SEC Amicus Brief, p.19.

That statutory purpose necessarily requires that a controlling shareholder is

presumed to have an indirect pecuniary interest in issuer repurchases:

> Where there is no control, the potential for abuse of inside
> information is obviously remote, but where control is present, so is
> the potential for abuse – and Section 16(b) was designed to prevent
> such abuse by 'squeezing all profit' from transactions in which
> there was potential for abuse.

SEC Amicus Brief, p.22.

The SEC realized when adopting SEC Rule 16a-1(a)(2) that if a controlling

shareholder could avoid Section 16(b) by indirectly purchasing shares through his

controlled company, the controlling shareholder would have a simple means to

evade disgorgement of short-swing profits.  *See* Proposing Release, 53 Fed. Reg. at

50001, SEC Amicus Brief*,* p.  22.  The SEC Amicus Brief confirms that such a

transaction should be attributed to the insider to avoid the potential for abuse:

> Since there is obvious opportunity for abuse of insider information if
> an insider may "escape section 16(b) liability because certain
> transactions were performed by another corporation over which the
> [insider] exercised control" (<u>Synalloy Corp. v. Gray</u>, 816 F. Supp.
> 963,971 (D. Del. 1993)), such transactions should be attributed to the
> insider where he has control over the transacting corporation….

26

SEC Amicus Brief, p. 22

The Second Circuit adopted the interpretation of Rule 16a-1(a)(2) articulated in the SEC Amicus Brief. *See Mercer v. Gupta*, 712 F.3d 756, 757-758 (2d Cir. 2013), *cert. denied*, 571 U.S. 888 (2013) (an insider that does not directly own securities can be liable under the statute if it is determined to have direct or indirect beneficial ownership of securities subject to short-swing transactions).

In *Feder*, the shares in question were sold by a corporate shareholder and in the present case, the shares were purchased by the corporate issuer. In both cases, the opportunity to profit from insider information is the same. The facts here are even more compelling than in *Fede*r where Frost was alleged to control North American Vaccine, Inc. ("NAVI"), which sold shares of IVAX Corporation, a public company of which Frost was Chairman and CEO, because NAVI received the proceeds from its sales. Here, Russell executed the sale of 10.5 million shares of Luminar Common Stock, pocketed the sale proceeds, and increased his percentage ownership in Luminar through Luminar's Repurchases. By virtue of his control, Russell is presumed to have an indirect pecuniary interest in the shares repurchased by Luminar and is liable to the extent of his pecuniary interest unless he can show that he could not have caused or prevented Luminar's Repurchases. *See*, SEC Amicus Brief, pp. 26-27. This factual issue is not properly determined in this motion to dismiss. *See Feder*, 220 F.3d at 35, SEC Amicus Brief p. 26-27.

27

### 2.    Rule 16a-1(a)(2) Is Consistent With SEC Reporting Regulations and Does Not Unduly Burden Corporate Insiders

Beneficial ownership for purposes of determining liability under Section 16(b) is based on whether a person has a pecuniary interest, or the "opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." SEC Rule 16a-1(a)(2)(i). The district court's assertion that Rule 16a-1(a)(2)'s coverage of indirect interests in company share repurchases is inconsistent with the SEC's reporting regime is without basis. (D58, p. 11 ("[T]he SEC seems not to be operating in accordance with Roth's theory.")). Rule 16a-1(a)(2) only applies to indirect interests in company share repurchases by controlling shareholders who have control over a company's share repurchases. Officers and directors who are not controlling shareholders should not be subject to reporting such indirect interests under Rule 16a-1(a)(2). Public companies should have appropriate controls in place to prevent a controlling shareholder from exercising such control.

The recent SEC rulemaking governing share repurchase disclosures—Share Repurchase Disclosure Modernization, Release No. 34-97424, 88 Fed. Reg. 36002, 36007-36009 (June 1, 2023)—does not have any bearing on the question of whether a controlling shareholder's indirect interests in a company's share

repurchases are subject to Section 16.[9]  In its rulemaking, the SEC was not

addressing Section 16 reporting or liability under Section 16(b) for transactions

involving indirect interests in company share repurchases.  The SEC promulgated

rules to require greater transparency into a company's reasons for its share

repurchases, as well as to require more granular disclosure of company repurchases

to allow investors to better evaluate how companies were using share repurchases

and whether such share repurchases were motivated by factors other than long-

term value maximization.  88 Fed. Reg. at 36007-36009.[10]

The district court places significance on the SEC not mentioning Section

16(b) in the Share Repurchase Disclosure Modernization Release.  (D58,  p. 12).

The SEC rulemaking simply had nothing to do with Section 16(b) and it would

have been inappropriate for the SEC to make a statement regarding the

_____

[9] The Fifth Circuit vacated the SEC's Share Repurchase Disclosure Modernization final rule for violating the Administrative Procedure Act.  *Chamber of Com. Of U.S. v. U.S. Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023).

[10]  If the SEC had determined that a controlling shareholder's indirect interest in company share repurchases did not lend itself to speculative abuse and therefore should be exempted, surely the SEC would have provided such an exemption.  The SEC has exempted other transactions by issuers where insider's interests are affected, such as compensatory transactions between an issuer and its officers and directors (SEC Rule 16b-3, 17 C.F.R. §240.16b-3), stock splits and dividends and the acquisition of rights on a pro rata basis (SEC Rule 16a-9, 17 C.F.R. § 240.16a-9), acquisitions under dividend reinvestment plans (SEC Rule 16a-11, 17 C.F.R. § 240.16a-11), and acquisitions pursuant to mergers (SEC Rule 16b-7, 17 C.F.R. § 240.16b-7).

applicability of Rule 16a-1(a)(2) to indirect interests in company repurchases in an unrelated rulemaking relating to new disclosure requirements for reporting companies.

In cases where a controlling shareholder sells shares at inflated prices and causes the company to repurchase its shares at depressed prices, it is consistent with the statutory purpose of Section 16(b) to subject such transactions to Section 16(b). Such an outcome applies Section 16(b) consistent with the plain meaning of the Statute, Rule 16a-1(a)(2), and SEC guidance.

## II.    THE DISTRICT COURT'S NARROW CONSTRUCTION OF "BENEFICIAL OWNERSHIP" WOULD UNDERMINE SECTION 16(b) AND RESULT IN MANIFEST INJUSTICE TO ISSUERS

The Supreme Court has held that "where alternative constructions of the terms of Section 16(b) are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders." SEC Amicus Brief at p. 13, quoting *Reliance Electric Co.*, 404 U.S. at 424. The SEC's definition of "beneficial owner" and construction of Rule 16a-1(a)(2) to apply to indirect interests in stock repurchases by <u>controlling shareholders</u> who have control over a company's share repurchases serves this congressional purpose. SEC Amicus Brief at p. 19.

The district court disregarded the SEC's construction of SEC Rule 16a-1(a)(2) in its *Feder* Amicus Brief, which is controlling on this Court, *Auer v.*

30

*Robbins*, 519 U.S. 452, 461 (1997), and held that an issuer's stock repurchases can never be attributed for short-swing profit purposes to an insider even if the insider has control over the issuer. (D58, pp. 8-12). Under the district court's construction of Rule 16a-1(a)(2), a controlling stockholder has an incentive to make use of inside information through issuer repurchases since he knows he can never be liable under Section 16(b).

Harvard Law School Professor Jesse E. Fried has written extensively about how insiders may engage in insider trading through company share repurchases. Professor Fried explains that bargain repurchases transfer value from selling shareholders to non-selling shareholders pro rata. Fried, 162 U. Pa. L. Rev. at 815-820. In testimony before Congress, Professor Fried explained that a company share repurchase is economically equivalent to non-selling shareholders buying stock at a cheap price from selling shareholders and then receiving a dividend from the company equal to the purchase price.[11]

> Because the economic consequences of a repurchase are identical to the economic effects of this two-step transaction, it follows that repurchasing stock for a price below the stock's actual value transfers

---

[11] Testimony Before the House Subcommittee Hearing on "Examining Corporate Priorities: The Impact of Stock Buybacks on Workers, Communities, and Investment" at pp. 2-6, 8 (October 17, 2019) available at: https://democrats-financialservices.house.gov/uploadedfiles/hhrg-116-ba16-wstate-friedj-20191017.pdf. ("**Fried Testimony**").

31

value from sellers to non-selling shareholders.  In effect, non-selling shareholders buy shares from the sellers at a bargain price.[12]

As Professor Fried recognized, "when insiders know that stock prices are low, they have a strong incentive to conduct a bargain repurchase to transfer value from selling shareholders to themselves and other nonselling shareholders."  Fried, 162 U. Pa. L. Rev. at 816.  The district court's unduly narrow construction of Rule 16a-1(a)(2) would undermine Section 16(b)'s purpose of curbing short-swing speculation by Statutory Insiders and create a manifest injustice to issuers.  *See* Point I, *supra*.

## **<u>CONCLUSION</u>**

The Court should vacate the MTD Order (D58) and Final Order (D71) below and remand to the district court for further proceedings on the merits.

Dated:  April 24, 2024.


Respectfully submitted,

OSTRAGER CHONG FLAHERTY
  & BROITMAN P.C.


 */s/ Glenn F. Ostrager*
Glenn F. Ostrager
Joshua S. Broitman

---

[12]  Jesse M. Fried, *Informed Trading and False Signaling with Open Market Repurchases*, 93 Calif. L. Rev. 1323, 1346 (October 2005).

437 Madison Avenue
New York, New York 10022
Tel.: (212) 681-0600
Fax: (212) 681-0300
Email: gostrager@ocfblaw.com
Email: jbroitman@ocfblaw.com


LANIGAN & LANIGAN, PL.
Roddy B. Lanigan
831 West Morse Boulevard
Winter Park, Florida 32789
Tel.: (407) 740-7379
Fax: (407) 740-6812
Email: rbl@laniganpl.com


*Attorneys for Appellant Andrew E. Roth*

33

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed.R.App. Rule 32(a)(7)(B) because this brief contains 7,345 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(f) and the rules of this Court.  In making this certification, I have relied upon the word count function in Microsoft Word.

This brief complies with the typeface requirements of Fed.R.App. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word in Times New Roman, Font Size 14.

Dated:    April 24, 2024

 */s/ Glenn F. Ostrager*
Glenn F. Ostrager

*Attorney for Plaintiff-Appellant*
*Andrew E. Roth*

34

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 24 2024, the foregoing document was electronically filed with this Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/ Glenn F. Ostrager*
Glenn F. Ostrager

*Attorney for Plaintiff-Appellant*
*Andrew E. Roth*