No. 24-10448

IN THE

# United States Court of Appeals
## for the Eleventh Circuit

ANDREW E. ROTH

*Plaintiff-Appellant,*

*v.*

AUSTIN RUSSELL AND LUMINAR TECHNOLOGIES, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Middle District of Florida
Case No. 6-23-cv-00722-JA-RMN
Honorable John Antoon II

## ANSWERING BRIEF OF DEFENDANTS-APPELLEES

John M. Brennan, Jr.
GRAYROBINSON, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802
407-843-8880

James N. Kramer
Alexander K. Talarides
M. Todd Scott
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
415-773-5700

*Counsel for Defendants-Appellees*

*Roth v. Russell, et al.,*
No. 24-10448

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 to 26.1-3, Defendant-Appellee Austin Russell, by and through his undersigned counsel, certifies that the following is an alphabetical list of persons and entities that have an interest in the outcome of this case:

1.  Brennan, Jr., John M., *Counsel for Defendants-Appellees;*

2.  Broitman, Joshua S., *Counsel for Plaintiff-Appellant;*

3.  GrayRobinson, PA, *Counsel for Defendants-Appellees;*

4.  Gomez, Roberto, *Counsel for Plaintiff-Appellant;*

5.  Kramer, James N., *Counsel for Defendants-Appellees*

6.  Lanigan & Lanigan, PL, *Counsel for Plaintiff-Appellant;*

7.  Lanigan, Roddy B., *Counsel for Plaintiff-Appellant;*

8.  Luminar Technologies, Inc., *Nominal Defendant-Appellee;*

9.  Orrick, Herrington & Sutcliffe LLP, *Counsel for Defendants-Appellees;*

10. Ostrager Chong Flaherty & Broitman, P.C., *Counsel for Plaintiff-Appellant;*

11. Ostrager, Glenn F., *Counsel for Plaintiff-Appellant;*

12. Roth, Andrew E., *Plaintiff-Appellant;*

i

*Roth v. Russell, et al.,*
No. 24-10448

13. Russell, Austin, *Defendant-Appellee;*

14. Scott, M. Todd, *Counsel for Defendants-Appellees;*

15. Talarides, Alexander K., *Counsel for Defendants-Appellees.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Counsel for Nominal Defendant-Appellee Luminar Technologies, Inc. certifies that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated: May 24, 2024        Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/James N. Kramer*
James N. Kramer
*Counsel for Defendant-Appellee*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Austin Russell does not believe that oral argument is necessary in this case. As discussed below, Plaintiff's theory of liability under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act") is directly refuted by the plain language of the statute, has never been adopted by any court, is refuted by decades of guidance from the U.S. Securities and Exchange Commission (the "SEC"), and would wreak havoc on American business if adopted. That said, if the Court desires oral argument, Mr. Russell and his counsel are available to present these and other issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT.............................................i

STATEMENT REGARDING ORAL ARGUMENT..................................iii

TABLE OF CONTENTS ...............................................................iv

TABLE OF AUTHORITIES ..........................................................vi

INTRODUCTION AND SUMMARY OF ARGUMENT...........................1

STATEMENT OF THE ISSUES.......................................................4

STATEMENT OF THE CASE ........................................................5

    I.    Statement of Facts .......................................................5

    II.   The Complaint's Allegations...........................................6

    III.  Procedural History ....................................................7

ARGUMENT ...........................................................................9

    I.    Plaintiff's Section 16(b) Claim Fails As A Matter Of
         Law ...................................................................10

         A.    Plaintiff's Section 16(b) Claim Is Barred by the
               Plain Language of The Statute ...................................10

         B.    Plaintiff's Section 16(b) Claim Fails As A Matter
               Of Law Because Mr. Russell Did Not Purchase
               Luminar Shares ...........................................17

         C.    Plaintiff's Section 16(b) Claim Fails As A Matter
               Of Law Because Mr. Russell Did Not and Could
               Not "Profit" from Luminar's Repurchases of Its
               Own Stock ...................................................25

D.    Plaintiff's Theory of Liability Would Violate the
Purpose of Section 16(b) and Disrupt Business .......... 31

II.    The District Court Was Well Within Its Discretion to
Deny Plaintiff's Motion for Reconsideration ......................... 32

CONCLUSION ........................................................................................ 36

CERTIFICATE OF COMPLIANCE ........................................................ 38

CERTIFICATE OF SERVICE ................................................................. 39

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Adler v. Klawans,*
267 F.2d 840 (2d Cir. 1959) ................................................................. 15

*Am. Dental Ass'n v. Cigna Corp.,*
605 F.3d 1283 (11th Cir. 2010) ............................................................. 9

*Arthur v. King,*
500 F.3d 1335 (11th Cir. 2007) ........................................................... 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................... *passim*

*Blau v. Max Factor & Co.,*
342 F.2d 304 (9th Cir. 1965) ............................................................... 14

*Chappell v. Chao,*
388 F.3d 1373 (11th Cir. 2004) ....................................................... 9, 27

*In re Corp. Jet Aviation, Inc.,*
45 B.R. 629 (Bankr. N.D. Ga. 1990) ............................................... 19, 28

*Credit Suisse Sec. (USA) LLC v. Simmonds,*
566 U.S. 221 (2012) ........................................................................... 31

*Donoghue v. Murdock,*
2013 WL 4007565 (S.D.N.Y. Aug. 6, 2013) ........................................ 28

*Donoghue v. Patterson Cos., Inc.,*
990 F. Supp. 2d 421 (S.D.N.Y. 2013) .................................................. 28

*Enterasys Networks, Inc. v. Gulf Ins. Co.,*
364 F. Supp. 2d 28 (D.N.H. 2005) ................................................. 19, 28

*Feder v. Frost,*
220 F.3d 29 (2d Cir. 2000) .......................................................... *passim*

*Foremost-McKesson, Inc. v. Provident Sec. Co.,*
423 U.S. 232 (1976) .................................................................... 15, 17

*Fultz v. Anzac Oil Corp.*,
240 F.2d 21 (5th Cir. 1957) .................................................................. 19

*Gibbons v. Malone*,
703 F.3d 595 (2d Cir. 2013) .............................................................. 16

*Gund v. First Fla. Banks, Inc.*,
726 F.2d 682 (11th Cir. 1984) ........................................ 18, 23, 27, 31

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*,
156 F.3d 305 (2d Cir. 1998) ........................................................ 26, 31

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
626 F.3d 1327 (11th Cir. 2010) .......................................................... 33

*Kern Cnty. Land Co. v. Occidental Petroleum Corp.*,
411 U.S. 582 (1973) .............................................................................. 23

*Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.*,
189 F.R.D. 480 (M.D. Fla. 1999) ........................................................ 34

*Magma Power Co. v. Dow Chem. Co.*,
136 F.3d 316 (2d Cir. 1998) ........................................................ 17, 31

*Mitchell v. DHR*,
2023 WL 3302872 (11th Cir. May 8, 2023) ........................................ 33

*Moore v. United States*,
2023 WL 5625111 (M.D. Fla. Aug. 31, 2023) .................................... 36

*N. Am. Specialty Ins. Co. v. Pipeline Contractors, Inc.*,
2019 WL 2247691 (M.D. Fla. May 24, 2019) .................................... 27

*Obadiah v. United States*,
2024 WL 1928370 (11th Cir. May 2, 2024) ........................................ 32

*Olagues v. Frost*,
325 F. Supp. 3d 1315 (S.D. Fla. 2018)................................................ 12

*Popkin v. Dingman*,
366 F. Supp. 534 (S.D.N.Y. 1973)................................................ *passim*

*Rosenberg v. XM Ventures*,
274 F.3d 137 (3d Cir. 2001) ................................................................ 14

*S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*,
575 F.2d 1040 (2d Cir. 1978) ............................................................. 29

*Sanderlin v. Seminole Tribe of Fla.*,
243 F.3d 1282 (11th Cir. 2001) ............................................................ 9

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678 (11th Cir. 2014) ............................................................ 32

*Shuler v. Garrison*,
718 F. App'x 825 (11th Cir. 2017) ...................................................... 35

*Smolowe v. Delendo Corp.*,
136 F.2d 231 (2d Cir. 1943) ............................................................... 15

*Strong v. Comm'r of Internal Revenue*,
2007 WL 895131 (T.C. Mar. 26, 2007) ......................................... 18, 28

*Synalloy Corp. v. Gray*,
816 F. Supp. 963 (D. Del. 1993) ..................................................... 22, 36

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................ 10

*Thompson v. RelationServe Media, Inc.*,
610 F.3d 628 (11th Cir. 2010) ...................................................... 10, 11

*U.S. v. Anderson, Clayton & Co.*,
350 U.S. 55 (1955) .............................................................................. 18

*U.S. v. Simien*,
2023 WL 3082358 (W.D. Tex. Ap. 24, 2023) ...................................... 35

*U.S. v. Stricker*,
524 F. App'x 500 (11th Cir. 2013) ...................................................... 12

viii

## Statutes, Rules and Other Authorities

15 U.S.C.
 § 78p(a)(1), Securities Exchange Act of 1934, Section 16(b) .............. 11
 § 78p(b), Securities Exchange Act of 1934, Section 16(b) .......... *passim*

17 C.F.R.
 § 240.16a-1(a)(2), SEC Rule 16a .................................................. *passim*
 § 240.16a-1(a)(2)(ii), SEC Rule 16a ..................................................... 21
 § 240.16a-1(a)(2)(ii)(A)-(F), SEC Rule 16a ........................................ 21
 § 240.16a-1(a)(2)(iii), SEC Rule 16a ............................................ 24, 25
 § 240.16a-1(g), SEC Rule 16a ............................................................. 21

Fed. R. App. P.
 Rule 32(a)(5) ........................................................................................ 38
 Rule 32(a)(6) ........................................................................................ 38
 Rule 32(a)(7)(B) ................................................................................... 38
 Rule 32(f) ............................................................................................. 38

*Securities and Exchange Commission Release Notice*,
 SEC Release No. 34-79, 1935 WL 28977 (Jan. 13, 1935) .............. 1, 13

*Interpretive Release on Rules Applicable to Insider*
 *Reporting & Trading*,
 SEC Release No. 34-18114, 1981 WL 31301 (Sept. 24, 1981) ...... 13, 14

*Ownership Reports and Trading by Officers, Directors and*
 *Principal Security Holders*,
 SEC Release No. 34-27148, 1989 WL 1093497 (Aug. 29, 1989) ........ 20

*Ownership Reports and Trading by Officers, Directors and*
 *Principal Security Holders*,
 SEC Release No. 34-28869, 1991 WL 292000 (Feb. 21, 1991) ... 1, 2, 13

Jesse M. Fried, *Informed Trading and False Signaling With Open*
 *Market Repurchases*
 93 Calif. L. Rev. 1323, 1347 (2005) ............................................. 16, 17

Jesse M. Fried, *Insider Trading via the Corporation*
 162 U. Pa. L. Rev. 801, 830 (2014) ...................................................... 16

ix

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court correctly dismissed Plaintiff's novel Section 16(b) claim against Mr. Russell. Section 16(b) plainly distinguishes between the individual "beneficial owner, director or officer" who can be liable under the statute for short-swing stock trades, and the corporate "issuer" of the stock being traded, which cannot be held liable under the statute. 15 U.S.C. § 78p(b). As the district court put it, "the plain language of Section 16(b) establishes that the issuer and the insider are ***different persons***." D58 at 10 (emphasis added). Because Plaintiff seeks to conflate the two, and impose liability on Mr. Russell, the CEO, President and controlling shareholder of Luminar Technologies Inc. ("Luminar" or the "Company"), for stock repurchases made ***by Luminar***—the issuer of the stock being traded—the claim fails as a matter of law.

The district court's holding finds support in guidance from the SEC, which for over 50 years maintained a rule that exempted issuer repurchases from Section 16(b) liability, *see Securities and Exchange Commission Release Notice*, SEC Release No. 34-79, 1935 WL 28977, at *5 (Jan. 13, 1935), only to eliminate the rule in 1991 as "unnecessary" because an "issuer is not subject to Section 16" and "***transactions by the***

*issuer are not subject to Section 16*," *Ownership Reports and Trading by Officers, Directors, and Principal Security Holders*, SEC Release No. 34-28869, 1991 WL 292000, at *31 (Feb. 21, 1991) (emphasis added). Not surprisingly, no court has ever adopted Plaintiff's theory of liability in the 90 years since Section 16(b) was enacted.

Unable to plead that Mr. Russell personally made a matching purchase and sale of Luminar stock within a six-month period, as required by Section 16(b), Plaintiff instead cites SEC Rule 16a-1(a)(2) to argue that Mr. Russell had an "indirect pecuniary interest" in Luminar's stock repurchases because he owns stock in the Company. But Rule 16a-1(a)(2) addresses the unrelated situation of where an insider uses a family member or *another business entity* to profit from short-swing trades in issuer stock, and says nothing whatsoever about imputing *an issuer's* trades to an insider like Mr. Russell.

Plaintiff invites the Court to expand the scope of Rule 16a-1(a)(2) and recognize "shared profits" from issuer stock repurchases as an "indirect pecuniary interest" that triggers Section 16(b) liability. But as explained below, an issuer's repurchase of its own stock does not yield any profit that could be "shared." Here, the stock that Luminar

repurchased was retired and recorded on the Company's balance sheet as treasury stock, which has no value and is not considered an asset under generally accepted accounting principles. Therefore, even if Rule 16a-1(a)(2) included issuer repurchases (and it does not), it still would not create Section 16(b) liability for insiders like Mr. Russell, because there is no profit from issuer repurchases that could be "shared."[1]

Here, Plaintiff cannot cite any facts to support his bare assertion that Luminar profited from its stock repurchases, let alone that the profit was somehow "shared" with Mr. Russell. But even *if* Luminar could be said to have profited from its repurchases, federal courts have long recognized that the profit would not inure to an insider like Mr. Russell simply because he owns stock in the issuer. Otherwise, as the district court acknowledged, if Plaintiff were right and owning issuer stock were enough to give rise to Section 16(b) liability for issuer repurchases, then every time an issuer repurchased its own stock, *every* insider in that company would be subject to Section 16(b) liability—an absurd result.

---

[1] Plaintiff's primary authority, *Feder v. Frost*, 220 F.3d 29 (2d Cir. 2000), is readily distinguishable on that ground. Like the situation contemplated by Rule 16a-1(a)(2), *Feder* concerned an insider who used ***another company*** to trade in portfolio stock of the issuer, thus realizing cash profits that inured to the insider and triggered Rule 16(b) liability.

As further detailed below, for these reasons, and because Plaintiff's theory of liability violates the purpose of Section 16(b) and would greatly disrupt American business if adopted, the district court's dismissal should be affirmed.

## STATEMENT OF THE ISSUES

The issues on appeal are:

1.    Whether the district court's dismissal with prejudice should be affirmed because Plaintiff's theory of liability contradicts the plain language of Section 16(b), which distinguishes between the "officer, director or beneficial owner" that can be liable under Section 16(b), and the "issuer" of the stock being traded, which cannot be held liable under statute?

2.    Whether the district court's dismissal with prejudice should be affirmed for the additional reason that Mr. Russell is not alleged to have both sold and purchased Luminar stock within a six-month period, as required by Section 16(b)?

3.    Whether the district court's dismissal with prejudice should be affirmed for the additional reason that Mr. Russell did not profit or

share in any profit from Luminar's repurchase of its own stock, as required by Section 16(b)?

4.    Whether the district court's dismissal with prejudice should be affirmed for the additional reason that Plaintiff's theory of liability violates the intent of Section 16(b) and would disrupt business?

## STATEMENT OF THE CASE

### I.    Statement of Facts

Nominal Defendant Luminar is a publicly traded company that develops technologies for self-driving cars. Defendant Austin Russell founded Luminar and is the Company's President, CEO, and Chairman of its board of directors (the "Board"). *See* D41-2 at 8. As the Complaint alleges, on July 1, 2021, Mr. Russell personally sold 10,500,000 shares of Luminar's Class A Common Stock (the "Common Stock"). D11 at ¶ 9.

At all relevant times to this dispute, Luminar had a seven-member Board, six of whom (other than Mr. Russell) were certified independent under NASDAQ rules, which means they do not have "a relationship that would interfere with the exercise of independent judgment in carrying out the responsibilities of a director." D41-2 at 119. An eighth Board member was appointed in August 2022. Board members are selected and

nominated by Luminar's nominating and corporate governance committee, all the members of which satisfy SEC and NASDAQ independence requirements for committee membership. *Id.*

On December 12, 2021, the Board authorized a program for Luminar to repurchase $250 million of its Common Stock from third parties. D41-1; D41-2 at 81. The Board further authorized a private debt offering of approximately $500 million in convertible senior notes to pay for the stock repurchases, among other things. D41-1. As the Company disclosed under a header titled "**Treasury Stock**," the "repurchased shares have been recorded as Treasury Stock on the [Company's] balance sheet as of December 31, 2021." D41-2 at 81.

## II.    The Complaint's Allegations

Plaintiff's Section 16(b) claim is brought derivatively, purportedly on behalf of Luminar, against Mr. Russell as an individual, and asks the Court to order Mr. Russell to disgorge his alleged short-swing profits to the Company. D11 at ¶¶ 2, 12–13. Plaintiff alleges that Mr. Russell's July 1, 2021 sale of 10,500,000 shares of Common Stock at $21 per share, can be matched with ***Luminar's*** December 2021 corporate repurchases of

6

15,263,761 shares of Common Stock, which supposedly yielded short-swing profits to Mr. Russell in violation of Section 16(b). *Id.* at ¶¶ 9–13.

As Plaintiff would have it, because Mr. Russell owns 28.3% of the Company's outstanding stock, D11 at ¶ 14 (citing D41-3 at 1), he had a "28.3% indirect pecuniary interest in the Company repurchases," *id.* But while Section 16(b) requires disgorgement of short-swing ***profits***, Plaintiff does not—and cannot—allege any facts to plausibly show that Luminar realized any profit from the repurchase of its own shares, which were recorded as treasury stock on the Company's balance sheet. Plaintiff also does not—and cannot—allege any facts to plausibly show that Mr. Russell (or any other stockholder) realized a personal profit from the Company's stock repurchases. Nor does Plaintiff allege—because he cannot—that Mr. Russell ever became the owner of the shares that Luminar repurchased from third parties and recorded as treasury stock.

## III.  Procedural History

On October 17, 2023, the district court issued an order (the "Dismissal Order") dismissing Plaintiff's Section 16(b) claim on grounds that "imputing liability to Section 16(b) insiders for issuer repurchases is contrary to the statute." OB at 5 (citing D58). Plaintiff asserts that the

district court further "held that a controlling corporate insider like Russell does not have an 'indirect pecuniary interest' under Rule 16a-1(a)(2) in issuer repurchases," OB at 2, but, in fact, the district court did not reach that issue, *see* D58 at 8-12. Rather, the Dismissal Order is premised on the plain language of the statute, which "uses the term 'issuer' to refer to the company issuing the security and the phrase 'such beneficial owner, director or officer' to refer to the insider" who can be liable under Section 16(b). *Id.* at 10. As the District Court recognized, if Plaintiff's theory of liability were valid, and an issuer's trades could create liability for beneficial owners, directors and officers, then

> every time a company that issues an equity security conducts a sale or purchase in that security, every insider in that company is deemed to conduct the transaction himself under [Section 16(b)]. The statute does not say as much, and if Congress wanted to make every security transaction conducted by a company attributable to its insiders under [Section 16(b)], it could have done so in plain terms.

*Id.* at 9-10.

Plaintiff filed a motion for reconsideration of the Dismissal Order, which was denied by the district court in an order dated February 1, 2024 (the "Reconsideration Order"). *See* D71. The district court denied the motion for reconsideration because Plaintiff was "using . . . [it] to

8

relitigate old matters and to raise argument that either was raised or could have been raised prior to the entry of judgment." *Id.* at 5 (citation and internal quotation marks omitted).

## ARGUMENT

The Court "review[s] *de novo* the district court's" Dismissal Order "under Rule 12(b)(6) for failure to state a claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). Because the review is *de novo*, the Court "may affirm the district court's decision for reasons different than those stated by the district court." *Chappell v. Chao*, 388 F.3d 1373, 1376-77 (11th Cir. 2004). The standard of review for the District Court's Reconsideration Order is abuse of discretion. *See Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001).

For a complaint to adequately state a claim, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing the Dismissal Order *de novo*, the Court must not only "consider the complaint in its entirety," but must also "examine . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Because the complaint here "alleges violations of securities laws," the Court, like the district court, may properly "take judicial notice of [Luminar's] relevant SEC filings." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 n.5 (11th Cir. 2010) (citation omitted).

## I. Plaintiff's Section 16(b) Claim Fails As A Matter Of Law

### A. Plaintiff's Section 16(b) Claim Is Barred by the Plain Language of The Statute

Section 16(b) applies to stock transactions conducted by corporate insiders, not by the issuer of the stock, and creates a claim for the sole benefit of the issuer against those insiders. As the district court noted, "[t]his case presents the extraordinary situation in which the [] plaintiff, on behalf of the company that issued the equity security, seeks to

10

attribute to the insider a transaction ***conducted by that very company***." D58 at 8 (emphasis added). But as the district court correctly recognized, "[t]he statute does not say as much" as Plaintiff would like, "and if Congress wanted to make every security transaction conducted by a company attributable to its insiders under [Section 16(b)], it could have done so in plain terms." *Id.* at 10. Put simply, as the district court properly held, because Plaintiff's theory of liability is contradicted by the plain language of Section 16(b), it fails as a matter of law. *Id.*

    In pertinent part, Section 16(b) states that:

> For the purpose of preventing the unfair use of information which may have been obtained ***by [a] beneficial owner, director, or officer*** by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of [the] issuer . . . within any period of less than six months . . . shall inure to and be recoverable ***by the issuer***.

15 U.S.C. § 78p(b) (emphases added).[2] As courts have long recognized, "to state a claim under [Section 16(b)], a plaintiff must plausibly allege that there was (1) a purchase ***and*** (2) a sale of securities (3) ***by an officer or director of the issuer or by a shareholder*** who owns more than ten

---

[2] The term "beneficial owner" in this context means any "person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security" of the issuer. 15 U.S.C. § 78p(a)(1).

percent of any one class of the issuer's securities (4) within a six-month period." *Olagues v. Frost*, 325 F. Supp. 3d 1315, 1318 (S.D. Fla. 2018) (citations and internal quotation marks omitted).

Thus, as the district court held, the plain language of Section 16(b) "establishes that the issuer and the insider are ***different persons***." D58 at 10 (emphasis added). To conflate the two, and attribute issuer repurchases to individual stockholders like Mr. Russell, as Plaintiff advocates, would make the statute nonsensical. In the words of the district court: "[i]t does not make sense to think of the insider as obtaining information 'by reason of his relationship to' ***himself***; rather, the relationship with which the statute is concerned is that ***between*** the insider and the company of which he is a director, officer, or principal stockholder." *Id.* (emphases added) (citing *U.S. v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) ("We must presume that Congress said what it mean and meant what it said.")).

The SEC, which is charged with interpreting the securities laws, has long recognized that Section 16(b) does not create liability for an issuer's trades in its own stock. *See U.S. v. Stricker*, 524 F. App'x 500, 508 (11th Cir. 2013) ("considerable weight should be accorded to an

executive department's construction of a statutory scheme it is entrusted to administer." (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984)). Just after Section 16 of the Exchange Act was first adopted in 1934, the SEC issued Rule NA4, which specifically exempted issuer repurchases from Section 16(b) liability. *SEC Release Notice*, SEC Release No. 34-79, 1935 WL 28977, at *5 ("The following securities shall be exempted securities for the purposes of section 16(a) and 16(b) . . . [s]ecurities reacquired by or for account of the issuer and held by it or for its account.").[3] That exemption stood for more than 50 years, but in 1991 the SEC removed it, noting that it was "***unnecessary***" because "***transactions by the issuer are not subject to section 16*** since the issuer is the beneficiary of the short swing profit." *Ownership Reports and Trading*, SEC Release No. 34-28869, 1991 WL 292000, at *31 (emphasis added); *id.* at 7261 ("the issuer is not subject to Section 16").[4]

---

[3] In 1952 the rule was slightly modified to read: "Securities reacquired by or for the account of an issuer and held by it for its account shall be exempt from sections 16(a) and 16(b) during the time they are held by the issuer." *In re Matter of Adoption of Amendments*, SEC Release No. 34-4754, 1952 WL 47481, at *3 (Sept. 24, 1952).

[4] As the SEC noted elsewhere, "[i]mposition of the short-swing recovery provisions of Section 16(b) would be incongruous" in the context of an issuer's transactions in its own stock because "the company would owe

That 1991 proclamation by the SEC—"transactions by the issuer are not subject to section 16 since the issuer is the beneficiary of the short swing profit"—still holds true today, and alone requires dismissal of Plaintiff's Section 16(b) claim, as the district court recognized.[5]

Federal courts have also long recognized an issuer's trades cannot be attributed to a corporate insider under Section 16(b), and have repeatedly held that the statute requires that "***the insider both acquires and disposes of securities*** of his corporation" for liability to trigger. *Blau v. Max Factor & Co.*, 342 F.2d 304, 307 (9th Cir. 1965) (emphasis added); *Rosenberg v. XM Ventures*, 274 F.3d 137, 142 (3d Cir. 2001) ("[L]iability will attach under section 16(b) when ***an individual*** having beneficial ownership of more than 10 percent of any one class of the issuer's equity securities [or an officer or director] ***both*** purchases

---

any profit to itself." *Interpretive Release on Rules Applicable to Insider Reporting & Trading*, SEC Release No. 34-18114, 1981 WL 31301, at *18 & n.59 (Sept. 24, 1981).

[5] As the district court noted, just last year the SEC updated its disclosure requirements related to issuer repurchases, and "did not refer directly to [Section 16(b)] at all." D58 at 11 (citing *Repurchase Disclosure Modernization*, SEC Release No. 34-97424, 88 Fed. Reg. 36002, 36007-36009 (June 1, 2023)). "If the SEC viewed issuer repurchases as insider purchases [under Section 16(b)] purposes, surely it would have referred to [Section 16(b)] somewhere in its comprehensive report." *Id.* at 12.

and sells shares of the issuer within six months" (emphasis added));
*Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243–44
(1976) (requiring an insider's "***pair*** of security transactions within six
months" to trigger liability (emphasis added)). Federal courts have also
long acknowledged that the "plain . . . intent of Congress" with Section
16(b) was "to reach a 'purchase and sale' or 'sale and purchase' . . . by
***someone within one of the proscribed categories [of insiders]***,"
*Adler v. Klawans*, 267 F.2d 840, 844 (2d Cir. 1959) (emphasis added), in
order to "protect the 'outside' stockholders against at least short-swing
speculation ***by insiders*** with advance information," *Smolowe v. Delendo
Corp.*, 136 F.2d 231, 235 (2d Cir. 1943) (emphasis added).

 *Popkin v. Dingman*, 366 F. Supp. 534 (S.D.N.Y. 1973) is
particularly instructive. In that case, like here, the defendants were
insiders of a public corporation. *Id.* at 536. The insiders had purchased
company stock, and then, several months later, the corporation
separately sold stock at a higher price. *Id.* The plaintiff sued under
Section 16(b), and the "central issue [was] whether liability can be
imposed on a stockholder-director for ***his company's*** sale and ***his own***
purchase" under Section 16(b). *Id.* at 537 (emphases added).

15

The court flatly rejected the claim, holding that *a "corporation's [transaction] cannot be treated as the defendant[s'] [transaction]* without disregarding the requirement that *the insider engage in the transaction*." *Id.* at 538 (emphases added). The defendants in *Popkin* "did not dispose of any securities" because "the sale of []stock was the act of [the corporation]." *Id.* The court therefore concluded that "it would be illogical and beyond any accepted understanding of corporate organization to attribute the act of the corporation to [the defendant-insiders]." *Id.* That is exactly the case here, and why the dismissal of Plaintiff's Section 16(b) claim should be affirmed. *See Gibbons v. Malone*, 703 F.3d 595, 603 (2d Cir. 2013) (affirming dismissal of Section 16(b) claim that was unsupported by "a straightforward reading of the text").

Tellingly, even Plaintiff's own academic authorities refute his theory of Section 16(b) liability. Specifically, Plaintiff cites to the academic writing of Jesse M. Fried, *see* OB at 19, but even Mr. Fried agrees that "Section 16(b) *does not apply* to [allegedly] indirect purchases made by insiders through [the issuer's] share repurchases," Jesse M. Fried, *Insider Trading via the Corporation*, 162 U. Pa. L. Rev. 801, 830 (2014) (emphasis added); *see also* Jesse M. Fried, *Informed*

16

*Trading and False Signaling With Open Market Repurchases*, 93 Calif. L. Rev. 1323, 1347 (2005) ("Section 16(b) does not apply to indirect purchases through stock buybacks.").

### B. Plaintiff's Section 16(b) Claim Fails As A Matter Of Law Because Mr. Russell Did Not Purchase Luminar Shares

Plaintiff's Section 16(b) claim also fails because Plaintiff does not, and cannot, allege that Mr. Russell made a matching sale and purchase of Luminar stock within a six-month period. That omission is independently fatal to Plaintiff's claim. *See Foremost–McKesson*, 423 U.S. at 243-44 (Congress "enact[ed] a flat rule that a corporation could recover the profits *these insiders made on a pair of security transactions* within six months" (emphasis added)); *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 325 (2d Cir. 1998) ("The settled rule is that an insider's inactivity cannot give rise to Section 16(b) liability.").

Instead, Plaintiff cites SEC Rule 16a-1(a)(2) to argue that *Luminar's* December 2021 stock repurchases can be attributed to Mr. Russell because he is a purported "beneficial owner" of the shares that Luminar purchased. OB at 16 (citing 17 C.F.R. § 240.16a-1(a)(2)). But there are several glaring flaws in that argument.

17

*First*, SEC Rule 16a-1(a)(2) defines "beneficial owner" as someone with a "direct or indirect pecuniary interest in the equity securities" being traded, and a pecuniary interest is defined as "the opportunity, directly or indirectly, ***to profit or share in any profit derived from a transaction in the subject securities***." 17 C.F.R. § 240.16a-1(a)(2) (emphasis added). But when an issuer repurchases its own shares, as Luminar did here, there is no profit realized, and thus no profit that could be "shared." Instead, when an issuer repurchases its own stock, the repurchased shares are either retired outright or, as Luminar did here, recorded as so-called treasury stock. *See* D41-2 at 81. Treasury stock is no longer considered to be outstanding and is not "taken into account in any payment of dividends, nor voted in shareholder meetings, nor counted for the purpose of establishing a quorum." *U.S. v. Anderson, Clayton & Co.*, 350 U.S. 55, 59-60 (1955). In short, treasury stock "has ***no value*** because it carries no voting rights, rights to dividends, or rights to distributions." *Strong v. Comm'r of Internal Revenue*, 2007 WL 895131, at *3 (T.C. Mar. 26, 2007) (emphasis added).[6] As a result, treasury stock

---

[6] *See also* 11 Fletcher Cyc. Corp. § 5080.80 (2023) ("Treasury shares go into something like a state of 'suspended animation' in that the

is "not carried on the corporate books as [an] asset[]," *Enterasys Networks, Inc. v. Gulf Ins. Co.*, 364 F. Supp. 2d 28, 32 (D.N.H. 2005), and under generally accepted accounting principles, is "reported on the balance sheet . . . as a ***reduction of stockholders' equity, not as an asset***," *In re Corp. Jet Aviation, Inc.*, 45 B.R. 629, 634 (Bankr. N.D. Ga. 1990) (emphasis added); *see also Fultz v. Anzac Oil Corp.*, 240 F.2d 21, 24 (5th Cir. 1957) ("it is clear that the term 'assets' no matter how broadly described did not include treasury stock").

Practically speaking, then, "a purchase by the corporation of its own stock is a form of shareholder distribution from which the corporation receives ***nothing***," and "should be treated as ***reducing surplus***." *In re Corp. Jet Aviation,* 45 B.R. at 634 (emphases added and citation omitted). When repurchased "shares [are] held as treasury stock," the "inescapable conclusion [is] that [the corporation] receive[s] ***less than a reasonably equivalent value for its . . . cash outlay***." *Id.* at 635 (emphasis added). Thus, when Luminar repurchased its own stock, it did not profit from the repurchase in any way, and there was no profit in which Mr. Russell

corporation, although nominally the owner, cannot exercise certain rights of ownership, such as the right to vote or to receive dividends").

could share. Mr. Russell therefore did not have a "indirect pecuniary interest" in the purchase under Rule 16a-1(a)(2), and he was not the "beneficial owner" of the shares Luminar repurchased.[7]

**Second**, Plaintiff cites Rule 16a-1(a)(2) to argue that Mr. Russell has an "indirect pecuniary interest" in Luminar's repurchases "measured by his approximate 28.3% ownership of Luminar's Common Stock." OB at 17. But the SEC defines "indirect pecuniary interest" as an "insider's ***ability to profit from purchases and sales*** in [issuer] securities held by family members, or through derivative securities, partnerships, corporations, trusts and 'other arrangements.'" *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, SEC Release No. 34-27148, 1989 WL 1093497, at *8 (Aug. 29, 1989) (emphasis added). As noted, an issuer does not "profit" from the repurchase of its

---

[7] Plaintiff argues that "[n]othing in the plain language of Section 16(b) directs or even suggests that the term 'beneficial owner' does not extend to a controlling shareholder's indirect pecuniary interest in issuer repurchases." OB at 17. But under the plain language of Section 16(b), a "beneficial owner" must have a "pecuniary interest" and either "profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a-1(a)(2). Because issuer repurchases do not generate profits, the term "beneficial owner" does not, and cannot, extend to a shareholder with respect to issuer repurchases.

own shares, and thus Mr. Russell cannot be said to have an "indirect pecuniary interest" in Luminar's repurchases, either.

Plaintiff fixates on the word "corporations" in the SEC guidance quoted above to argue that an issuer's trades can give rise to a shareholder's "indirect pecuniary interest" under Rule 16a-1(a)(2). OB at 21.[8] But Rule 16a-1(a)(2)(ii) identifies circumstances where an indirect pecuniary interest is presumed to exist, and they concern the inapposite situation where another individual or business entity profits from the sale of portfolio securities[9] for the benefit of the insider. *See* 17 C.F.R. § 240.16a-1(a)(2)(ii)(A)-(F) (recognizing an "indirect pecuniary interest" where an insider's immediate family member trades in issuer stock, a general partner shares in the partnerships' profits from trading portfolio securities, and a trust trades in securities to the benefit of a trust beneficiary). Nowhere does the Rule suggest that an insider can be deemed to have a pecuniary interest in **the issuer's** repurchase of its own

---

[8] Plaintiff's conclusory assertion that Mr. Russell has a pecuniary interest in the shares repurchased by Luminar is entitled to no weight. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept [a complaint's allegations] as true . . . is inapplicable to legal conclusions.").

[9] Rule 16a-1(g) defines "portfolio securities" as "all securities owned by an entity, **other than securities issued by the entity**." 17 C.F.R. § 240.16a-1(g) (emphasis added).

stock, particularly given that the issuer does not recognize a profit from repurchasing its own stock.

That conclusion finds support in federal caselaw. In the "few cases that have considered attribution of a corporation's investments to a director or shareholder" for purposes of Section 16(b), liability has "been limited to the specialized situation where the corporation was *the investment vehicle or alter ego of the individual*." *Popkin*, 366 F. Supp. at 539 (emphasis added); *see also* D58 at 5. Indeed, Plaintiff's primary authority, *Feder v. Frost*, 220 F.3d 29 (2d Cir. 2000) is readily distinguishable on that ground, because as the district court acknowledged, *see* D58 at 11, *Feder* concerned an insider who used *another corporation* to trade portfolio stock of the issuer, effectively using that *other corporation* as his investment vehicle, *see Feder*, 220 F.3d at 34 ("The complaint alleged purchases and sales of IVAX's stock by [Defendant] and [his controlled company] NAVI within a period of less than six months that resulted in a profit to NAVI.").[10] The SEC amicus

---

[10] Plaintiff also cites *Synalloy Corp. v. Gray*, 816 F. Supp. 963 (D. Del. 1993), but that decision is distinguishable for the same reason as *Feder*: it concerns "transactions [that] were performed by *another corporation* over which the [insider] exercised control," *id*. at 971 (emphasis added),

brief in *Feder* likewise addressed the inapposite situation of an outside company trading in issuer shares and said nothing whatsoever about attributing to an insider an issuer's repurchases of its own stock. *See* D58 at 11.

**Third**, if Plaintiff's theory of liability were correct, Mr. Russell would be personally liable under Section 16(b) for a stock repurchase that was approved by Luminar's independent Board, **not** by Mr. Russell personally. D41-1, D41-2 at 36, 39, 81. As the Supreme Court has recognized, Section 16(b) liability does not arise from such "involuntary" transactions thrust upon the insider, *see Kern County*, 411 U.S. at 599-600; *see also Gund v. First Fla. Banks, Inc.*, 726 F.2d 682, 686 (11th Cir. 1984) (Section 16(b) is inapplicable to "involuntary transactions" (citations omitted)); *Popkin*, 366 F. Supp. at 538 ("in every instance **the individual held liable must have performed acts**, **by himself or through his alter ego**, constituting the actual acquisition and disposition of securities." (emphasis added)).

---

**not** by the issuer of the securities, like here. Plaintiff's reliance on *Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582 (1973) is likewise off base, because *Kern County* addresses the question of whether an "exchange of stock **pursuant to a merger** may . . . result in [Section] 16(b) liability." *Id.* at 600 (emphasis added).

**Fourth**, and lastly, as the district court correctly held, if Plaintiff's theory of liability were correct, then every "insider[] who sold their company's stock for themselves less than six months before the company repurchased its own stock would be strictly liable for any profits they made from the pair of transactions." D58 at 11. Plaintiff asserts that Mr. Russell's controlling ownership in Luminar has some bearing on his liability, but the question of his control is a red herring. Mr. Russell is alleged to have an "indirect pecuniary interest" in Luminar's repurchases "measured by his approximate 28.3% ownership of Luminar's Common Stock." OB at 17; *see also* D11 at ¶ 14 (citing D41-3 at 1). In other words, Mr. Russell is alleged to have a "pecuniary interest" in Luminar's trades **because of his stock ownership**, which means that, under Plaintiff's theory, **every** statutory insider who owns issuer stock would also be deemed to have a pecuniary interest in the issuer's repurchases and would be subject to Section 16(b) liability for the issuer's trades.

As Plaintiff notes, SEC Rule 16a-1(a)(2)(iii) creates a "safe harbor" in the *Feder* context, where an insider owns stock in another company and that other company trades issuer shares as part of its portfolio stock. *See* OB at 25. In that inapposite situation, insiders are deemed to not

24

have a pecuniary interest in the portfolio securities of the other company if they can show they are "not a controlling shareholder [in that other company] and do[] not have or share investment control over th[at] entity's portfolio." 17 C.F.R. § 240.16a-1(a)(2)(iii). This rule exists, obviously, because if it did not, then insider investors in other companies would face Section 16(b) liability every time the other companies traded issuer stock.

But no such "safe harbor" exists in this situation, where an issuer trades in its own stock, and thus it does not matter whether Mr. Russell or any other statutory insider has "control" over Luminar. If Plaintiff's theory of liability were correct, then, as the district court recognized, "every time a company that issues an equity security conducts a sale or purchase in that security, every insider in that company [would be] deemed to conduct the transaction himself under 15 U.S.C. § 78p(b)," D58 at 9-10, without any recourse, which would be a patently absurd result.

### C.    Plaintiff's Section 16(b) Claim Fails As A Matter Of Law Because Mr. Russell Did Not and Could Not "Profit" from Luminar's Repurchases of Its Own Stock

Even ignoring the defects identified above, Plaintiff's Section 16(b) claim against Mr. Russell also fails because Plaintiff does not, and

cannot, allege any facts to plausibly show that there was "any ***profit realized by him*** from any purchase and sale, or any sale and purchase, of any equity security of [the] issuer." 15 U.S.C. § 78p(b) (emphasis added). This flaw is separately fatal to Plaintiff's Section 16(b) claim. *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 310 (2d Cir. 1998) ("there can be no liability under Section 16(b) unless the statutory requirements are also met." (citation omitted)).

Here, the Complaint baldly asserts that because Mr. Russell owned 28.3% of Luminar's stock, he had "the opportunity to, directly or indirectly, profit or share in any profit derived from the Company's repurchases," D11 at ¶ 11, and thereby allegedly "realized short-swing profits of at least $23,974,026,21," *id.* at ¶ 15, representing his "28.3% indirect pecuniary interest in the Company repurchases," *id.* at ¶ 14. The district court held that those conclusory allegations of Mr. Russell's purported "profit" were sufficient at the pleading stage. *See* D58 at 7 n.3.

But Plaintiff does not allege any ***factual basis*** for his claim that Mr. Russell personally profited from Luminar's repurchases. As the Court knows, "mere conclusory statements [alone] ***do not suffice***" to plead a claim, *Iqbal,* 556 U.S. at 678 (emphasis added), and bare

assertions of "profit," like those alleged here, are not "entitled to be assumed true" for purposes of a motion to dismiss, *id.* at 694. Because the Complaint pleads no *facts* to *plausibly* show that Mr. Russell personally profited from Luminar's repurchases, the Court can affirm the judgment below for this additional reason. *See Chappell*, 388 F.3d at 1376-77 (on *de novo* review, the Court "may affirm the district court's decision for reasons different than those stated by the district court").

That is particularly true here because Plaintiff's allegations and the documents incorporated by reference into the Complaint[11] affirmatively demonstrate that Mr. Russell did not, and *could not have*, "share[d] in any profit derived from the Company's repurchases," D11 at ¶ 11, for two separate reasons.

*First*, Luminar did not profit from its repurchase of its own shares. As discussed above, when Luminar repurchased its own shares, the shares were recorded as treasury stock on the Company's balance sheet.

---

[11] *See N. Am. Specialty Ins. Co. v. Pipeline Contractors, Inc.*, 2019 WL 2247691, at *1 n.1 (M.D. Fla. May 24, 2019) (in "decid[ing] a motion to dismiss under Rule 12(b)(6), a court may consider factual allegations in the complaint, items attached to the complaint, anything extrinsic to the complaint that is central to the claim and without challenge to its authenticity, and any judicially noticeable facts") (citing *Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)).

D41-2 at 81. Treasury stock "has no value," *Strong*, 2007 WL 895131, at *3, is "not carried on the corporate books as [an] asset[]," *Enterasys Networks,* 364 F. Supp. 2d at 32, and is therefore worth "less than [the] reasonably equivalent value" of Luminar's "cash outlay" to purchase it, *In re Corp. Jet Aviation,* 45 B.R. at 635. Indeed, Luminar borrowed more than $500 million in connection with the share repurchase, D41-1, and then recorded the repurchased shares as valueless treasury stock. No "profit" was realized by Luminar that Mr. Russell or any other shareholder could have "shared" in. *See* D11 at ¶ 11.

To the extent Plaintiff argues that Mr. Russell "profited" from Luminar's repurchases because they had an anti-dilutive effect on his stock holdings, *see* OB at 18 (arguing that a company's repurchases "increase[] the insider's percentage ownership in the issuer"), that argument also fails under established law. Section 16(b) targets the "use of informational advantages to generate profits, ***not the use of market power to drive up share price*** improperly." *Donoghue v. Patterson Cos., Inc.*, 990 F. Supp. 2d 421, 426 (S.D.N.Y. 2013) (emphasis added); *see also Donoghue v. Murdock*, 2013 WL 4007565, at *10 (S.D.N.Y. Aug. 6, 2013) ("the risk that Murdock could inflate the price of Dole stock through open

market purchases to a level favorable to him . . . is not the concern of § 16(b).”). As a result, “*no gain in the value of securities should be deemed to be realized as a profit* under [the Exchange] Act *until* there [is] a definitive act by the owner of the securities whereby *the paper value of the securities has become a real and an includible one* . . . .” *Popkin*, 366 F. Supp. at 538 (quoting *Heli-Coil Corp. v. Webster*, 352 F.2d 156, 167–68 (3d Cir. 1965) (emphases added)).[12] Here, Luminar did not realize “the paper value” of the repurchased shares—they were recorded on the balance sheet as treasury stock—and thus no “profit” under the statute has been realized by anyone, let alone by Mr. Russell.[13]

---

[12] Section 16(b)’s use of the word “profit connotes an ‘excess of returns over expenditures in a transaction or series of transactions: as . . . the excess of the price received over the price paid for goods sold.’” *S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*, 575 F.2d 1040, 1043-44 (2d Cir. 1978). “The language of the statute ‘any profit realized . . . shall inure to and be recoverable by the issuer[]’ underscores this understanding of the term. The word ‘realized’ also connotes gain. The word ‘recoverable’ implies the existence of *a tangible asset* or a fund.” *Id.* (emphasis added).

[13] By way of contrast, the company in *Feder* sold *portfolio* stock, or the stock of other companies, for which it received *cash profits*. *See* 220 F.3d at 31. As the court there held, “‘profit realized,’ as used in Section 16(b), [extends] to increases in the value of shares of a corporation dealing in portfolio securities,” *id.* at 36, because the paper value of the shares is realized. Here, Luminar traded in its own treasury stock, and no profit was realized.

***Second***, and in any event, even if Luminar had received a "profit" from its repurchases of its own stock, and it did not, there are **no** facts alleged to support Plaintiff's claim that Mr. Russell directly profited from Luminar's repurchases or somehow indirectly "shared" in Luminar's purported profit. D11 at ¶ 11. At most, Plaintiff concludes that Mr. Russell shared in Luminar's purported profits because he had an "indirect pecuniary interest" as a Luminar shareholder. *Id.* at ¶¶ 14-15. But Mr. Russell "cannot be said to have realized a profit" under Section 16(b) because his "only interest was that of a shareholder." *Popkin*, 366 F. Supp. at 538.[14] As discussed above, if owning issuer stock were enough to give rise to Section 16(b) liability for issuer repurchases, then every time an issuer purchases or sells its own stock, **every** insider in that company would be deemed to have conducted the transaction themselves and be subject to Section 16(b) liability.

---

[14] It goes without saying, but Mr. Russell also did not take ownership of the shares Luminar repurchased such that they could be matched with the shares he sold in July of 2021. *See* D41-2 at 81 (repurchased shares now held by Luminar as treasury stock).

30

### D.    Plaintiff's Theory of Liability Would Violate the Purpose of Section 16(b) and Disrupt Business

Section 16(b) was intended to operate as a "blunt instrument," *Magma Power*, 136 F.3d at 321, that "imposes a form of strict liability," *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012), where no "actual misuse of inside information or of unlawful intent is necessary to compel disgorgement," *Magma Power*, 136 F.3d at 320. The statute "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Id.* at 320–21. Put simply, Rule 16(b) "imposes liability without fault within its narrowly drawn limits." *Gund*, 726 F.2d at 686 (citation omitted).

Given Section 16(b)'s blunt force, courts apply it "only when its application would serve its goals," *Gwozdzinsky*, 156 F.3d at 310 (citation omitted), and the statute's goal is stated in its opening clause: to prevent "the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer,"15 U.S.C. § 78p(b). Adopting Plaintiff's theory of liability, where a company's stock repurchases could trigger liability for every insider who recently sold stock would plainly not serve that goal, because it

31

would create liability for insiders on the basis of transactions outside of their control, where there was no potential for them to abuse insider information.

Plaintiff's version of Section 16(b) would also put public company directors and officers in the untenable position of having to decide between (i) executing a company stock repurchase plan that would benefit shareholders as a whole, or (ii) delaying the repurchase in order to protect insiders who recently sold from Section 16(b) liability. That result is plainly not the goal of Section 16(b), would needlessly disrupt business, and thus cannot be the law.

## II.  The District Court Was Well Within Its Discretion to Deny Plaintiff's Motion for Reconsideration

Though Plaintiff ostensibly appeals the district court's Reconsideration Order, *see* OB at 32, Plaintiff does not argue the issue, and thus has abandoned it on appeal, *see e.g., Obadiah v. United States*, 2024 WL 1928370, at *1 (11th Cir. May 2, 2024) ("[A]n appellant . . . abandons a claim when he presents it through only 'passing references' or 'in a perfunctory manner without supporting arguments and authority.'" (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))); *see also Sapuppo,* 739 F. 3d at 681 ("[S]imply

stating that an issue exists," without more, "constitutes abandonment of that issue." (quoting *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009))). Plaintiff's appeal of the Reconsideration Order should be denied for that reason alone.

In any event, the district court's denial of Plaintiff's motion for reconsideration was well within its discretion. *See* D71. A court "may only grant a Rule 59(e) motion on the basis of newly discovered evidence or manifest errors of law or fact," *Mitchell v. DHR*, 2023 WL 3302872 at *1 (11th Cir. May 8, 2023) (citing *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021)), and must deny a motion for reconsideration where a party "did nothing but ask the district court to reexamine an unfavorable ruling," *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (a motion for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"). That was exactly the reason why the district court denied Plaintiff's motion for reconsideration—Plaintiff was "using . . . [it] to relitigate old matters and to raise argument that either was raised or could have been raised prior

33

to the entry of judgment." D71 at 5 (citation and internal quotation marks omitted).

Indeed, Plaintiff's motion for reconsideration did nothing but repeat wholesale the arguments that Plaintiff made previously in his Opposition to Mr. Russell's Motion to Dismiss (the "Opposition"). *See* D47. Specifically, the motion for reconsideration simply rehashed the Opposition's arguments concerning: (i) the statutory language of Section 16(b); (ii) the scope and purpose of SEC Rule 16a-1(a)(2), and the meaning of "indirect pecuniary interest"; and (iii) Mr. Russell's stock ownership and voting power. The district court was well within its discretion to deny the motion for reconsideration for that reason alone. *See Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.,*189 F.R.D. 480, 489 (M.D. Fla. 1999) ("This Court will not reconsider a previous ruling when the party's motion fails to raise new issues and, instead, only relitigates what has already been found lacking." (citing *Gov't Pers. Serv., Inc. v. Gov't Pers. Mut. Life Ins. Co.*, 759 F. Supp. 792, 793 (M.D. Fla. 1991), *aff'd*, 986 F.2d 506 (11th Cir.1993))).

Furthermore, Plaintiff's motion for reconsideration insisted that the Dismissal Order contained "manifest errors of law," but a manifest

error requires a "wholesale disregard, misapplication, or failure to recognize controlling precedent," *Shuler v. Garrison*, 718 F. App'x 825, 828 (11th Cir. 2017) (citation omitted)—something that is plainly not present in the Dismissal Order. Indeed, as the district court correctly held, in this case there is no "controlling precedent" at all because Plaintiff's theory of Section 16(b) liability is novel. As the Dismissal Order held, there simply are "no other cases" that address the "extraordinary situation" at issue here, where a "plaintiff, on behalf of the company that issued the equity security, seeks to attribute to the insider a transaction conducted by that very company." D58 at 8. Obviously, in the absence of controlling precedent, there can be no "wholesale disregard or misapplication" of controlling precedent, and thus no manifest error that would require reversal of the Dismissal Order. *Shuler*, 718 F. App'x at 828; *see also U.S. v. Simien*, 2023 WL 3082358, at *2 (W.D. Tex. Ap. 24, 2023) ("given the lack of binding authority" supporting plaintiff's arguments for manifest error, motion for reconsideration was denied).

Lastly, while the motion for reconsideration cited authorities that purportedly supported Plaintiff's novel theory of Section 16(b) liability,

they are all inapposite to the "extraordinary situation" at issue here. Specifically, as noted above, Plaintiff's reliance on *Feder* and the SEC's amicus brief in *Feder* is misplaced, because *Feder* stands for the inapposite proposition that a Section 16(b) claim can be pled by matching an insider's sales of stock with purchases of stock by ***another company***—not by the issuer of the securities in question, as is the case here. The motion for reconsideration also cited *Kern County* and *Synalloy Corp.*, but as noted above, *see supra* at 22 n.10, those cases are also readily distinguishable.

At bottom, because "the 'error' [Plaintiff] complain[ed] of clearly represent[ed] a disagreement between the Court and [Plaintiff] concerning the import of caselaw the Court discussed in its previous ruling," the motion for reconsideration was rightfully denied. *Moore v. United States*, 2023 WL 5625111, at *2 (M.D. Fla. Aug. 31, 2023).

## CONCLUSION

Plaintiff's novel theory of Section 16(b) liability cannot survive the plain language of Section 16(b), would create liability for insiders who have not made a matching purchase and sale, and would require disgorgement where no short-swing profit has been realized. For the

reasons discussed above, the dismissal with prejudice and judgment in favor of Mr. Russell should be affirmed.

May 24, 2024                                    Respectfully submitted,

                                               */s/ James N. Kramer*

John M. Brennan, Jr.                           James N. Kramer
GRAYROBINSON, P.A.                             Alexander K. Talarides
301 E. Pine Street, Suite 1400                 M. Todd Scott
Post Office Box 3068                           ORRICK, HERRINGTON &
Orlando, Florida 32802                            SUTCLIFFE LLP
407-843-8880                                   405 Howard Street
                                               San Francisco, California 94105
                                               415-773-5700

            *Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

The motion complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,799 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/James N. Kramer*
James N. Kramer
*Counsel for Defendants-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on DATE.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/James N. Kramer*
James N. Kramer
*Counsel for Defendants-Appellees*