[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10448

_____

ANDREW E. ROTH,

                                       Plaintiff-Appellant,

*versus*

AUSTIN RUSSELL,
LUMINAR TECHNOLOGIES, INC.,

                                       Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00722-JA-RMN

_____

Before LUCK, LAGOA, and ABUDU, Circuit Judges.

PER CURIAM:

Section 16(b) of the Securities Exchange Act of 1934 allows a company that issues stock—called the "issuer"—(or a shareholder on the issuer's behalf) to recover the "profit realized" by the company's "beneficial owner, director, or officer" from "any sale and purchase, of" company stock "within any period of less than six months." 15 U.S.C. § 78p(b). The question in this case is who must sell and purchase the issuer's stock under section 16(b) for the issuer (or a shareholder on its behalf) to recover realized profits.

Andrew Roth, a Luminar Technologies, Inc. shareholder, claims that under section 16(b) he can recover (on behalf of Luminar) realized profits where the company repurchased shares of its own stock on the open market. The district court rejected Roth's claim. So has every other federal court that has considered it. *See, e.g.*, *Roth ex rel. Estee Lauder Cos. v. LAL Fam. Corp.* ("*LAL Fam. Corp II*"), No. 24-2464-CV, 2025 WL 1479729 (2d Cir. May 23, 2025); *Roth v. LAL Fam. Corp.* ("*LAL Farm Corp. I*"), 748 F. Supp. 3d 180 (S.D.N.Y. 2024), *aff'd sub nom LAL Fam. Corp. II*, 2025 WL 1479729; *Roth ex rel. Altice USA, Inc. v. Drahi*, No. 23-CV-5522, 2024 WL 4198517 (E.D.N.Y. Sept. 16, 2024), *aff'd sub nom. LAL Fam. Corp. II*, 2025 WL 1479729; *Roth v. CK Amarillo LP*, No. 24-CV-0706, 2025 WL 966793 (S.D.N.Y. Mar. 30, 2025), *appeal docketed*, No. 25-1084 (2d Cir. Apr. 30, 2025). So do we. We hold that an issuer (or a shareholder on its behalf) cannot, under section 16(b), recover profits realized by a beneficial owner, director, or officer where the issuer

repurchased its own stock on the open market. For that reason, we affirm the dismissal of Roth's section 16(b) claim.

## I.

Austin Russell was the founder, chief executive officer, chairman, and majority shareholder of Luminar, a publicly traded automotive technology company. The company had a seven member board of directors.[1] All of the directors, save for Russell, were certified as independent. The independent directors were selected through Luminar's nominating and corporate governance committee, whose members were also independent under the Securities and Exchange Commission's regulations.

In July 2021, Russell sold about 10.5 million shares of his Luminar stock at the average price of $21 per share. Less than six months later, in December 2021, Luminar repurchased about 15 million shares of its own stock on the open market at the average price of $15.45 per share. Luminar recorded the repurchased shares as treasury stock.[2]

---

[1] Because the complaint "allege[d] violations of securities laws, we may . . . take judicial notice of relevant [Securities and Exchange Commission] filings." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 n.5 (11th Cir. 2010) (citing *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1278 (11th Cir. 1999)).

[2] Treasury stocks are "shares that have been issued as fully paid and have later been acquired by the corporation, but not retired or restored to the status of unissued shares." 11 Fletcher Cyc. Corp. § 5080.80 (Sept. 2024 Update). "The only value of such shares inheres in the possibility that they might be sold again." Richard A. Booth, Financing the Corporation § 6:15 (2022).

Roth, a Luminar shareholder, sent the company a letter demanding that it sue Russell to recover $23 million in profits that he claims Russell realized when Luminar repurchased its own stock. When the company refused, Roth sued Russell under section 16(b) "to obtain disgorgement of profits realized by" Russell in violation of the statute.[3]

Roth alleged that Luminar could recover Russell's profits because Russell sold shares of the company and Luminar repurchased shares of the company on the open market less than six months later. Russell, Roth alleged, had an indirect pecuniary interest in 28.3 percent of the repurchased shares based on his ownership interest in Luminar. Thus, according to Roth, Russell profited "to the extent of his pecuniary interest" in the transactions to the tune of $23 million.

Russell moved to dismiss the complaint for failure to state a claim, arguing that under section 16(b) an issuer (or a shareholder on its behalf) cannot recover the profits realized by the beneficial owner, director, or officer from the repurchase of the issuer's own stock. The district court agreed and granted Russell's motion. Section 16(b), the district court explained, "distinguishes between the" beneficial owner, director, or officer "who can be liable under the statute and the company issuing the stock, which cannot be liable,

---

[3] This suit is one of several that Roth brought on behalf of various issuers against beneficial owners, directors, and officers under section 16(b) for issuer stock repurchases. *See, e.g.*, *LAL Fam. Corp. I*, 748 F. Supp. 3d at 180; *Drahi*, 2024 WL 4198517, at *1; *CK Amarillo LP*, 2025 WL 966793, at *1.

and that the statute predicates liability on trades conducted by the" beneficial owners, directors, or officers, "not the company."[4] Roth appeals the dismissal of his complaint.

## II.

"We review de novo [a] district court's" dismissal "for failure to state a claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation and emphasis omitted).

## III.

In reviewing the dismissal de novo, we address the same question the district court did—whether the issuer (or a shareholder on its behalf) may recover, under section 16(b), the profits realized from the issuer's repurchase of its own stock on the open market. Like the district court, we conclude that the answer is no. Section 16(b)'s text tells us so. And so does the regulatory guidance from the Commission.

### *A.*

We begin, as we always do, with the text. *See Ross v. Blake*, 578 U.S. 632, 638 (2016) ("Statutory interpretation, as we always say, begins with the text."). Unlike other provisions of the Securities Exchange Act, section 16(b) is unique in that it imposes strict

---

[4] Every other federal court that has considered Roth's section 16(b) claim has also rejected it. *See*, *e.g.*, *LAL Fam. Corp. II*, 2025 WL 1479729 at *8; *LAL Fam. Corp. I*, 748 F. Supp. 3d at 195; *Drahi*, 2024 WL 4198517, at *5; *CK Amarillo LP*, 2025 WL 966793, at *3.

liability for violating its terms. *Compare* 15 U.S.C. § 78p(b) (stating that liability obtains "irrespective" of intent), *with* 15 U.S.C. § 78(2)(b) (stating that liability only obtains to "knowing or intentional misconduct). Scienter is not required. *See id*.

This unique feature of section 16(b) is reflected in the "irrespective" clause. *See id*. The "irrespective" clause says that "the issuer" (or a shareholder on its behalf) may recover the profits realized by the "beneficial owner, director, or officer" from a sale and purchase "irrespective of any intention on the part of such beneficial owner, director, or officer in *entering into such transaction*." *Id*. (emphasis added). Section 16(b), that is, removes intent—and imposes strict liability—only where the "beneficial owner, director, or officer . . . enter[s] into such transaction." *Id*. And "such transaction" is the "sale and purchase, of any equity security." *Id*.

Read together, section 16(b) allows an issuer (or a shareholder on its behalf) to recover profits realized where a beneficial owner, director, or officer is the one who "enter[s] into" the sale and purchase. *See id.*; *see also Popkin v. Dingman*, 366 F. Supp. 534, 537–38 (S.D.N.Y. 1973) ("Ordinary purchases and sales have always been understood *to be those enacted by the insider*. . . . [I]n every instance the individual held liable must have performed acts, by himself or through his alter ego, constituting the actual acquisition and disposition of securities." (emphasis added)). At the same time, the "irrespective" clause does not authorize strict liability where the issuer enters into the sale and purchase. *Cf. In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc) ("[T]he Supreme Court

observed that '[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).

That's the case here. Roth's claim seeks to recover profits under section 16(b) where the issuer, Luminar, purchased the stock—not the beneficial owner, director, or officer. But the "irrespective" clause removes intent—and imposes strict liability—only where the "beneficial owner, director, or officer . . . enter[s] into" the sale and purchase of stock. 15 U.S.C. § 78p(b); *cf. Foremost-McKesson, Inc. Provident Sec. Co.*, 423 U.S. 232, 251 (1976) (explaining that because section 16(b) "imposes liability without fault within its narrowly drawn limits . . . [i]t is inappropriate to reach the harsh result of imposing [section] 16(b)'s liability without fault on the basis of unclear language" and "[i]f Congress wishes to impose such liability, we must assume it will do so expressly or by unmistakable reference"); *LAL Fam. Corp. II*, 2025 WL 1479729, at *8 ("[S]ince there are insiders without knowledge of stock repurchases, Roth would make [s]ection 16(b) a trap sprung with every transaction. This harsh result cannot be what Congress intended.").

### B.

Roth doesn't really contest that the "irrespective" clause—and thus, strict liability—only applies where the "beneficial owner, director, or officer" is the one who "enter[s] into" the transactions to sell and purchase stock. *See id.* Instead, he points to the Commission's regulations to argue that an issuer (or a shareholder on its behalf) can recover profits realized by the beneficial owner,

director, or officer where the issuer repurchases its own shares. But the Commission's regulations are clear that issuer stock repurchases are not covered by section 16(b).[5]

First, the Commission's rules have excepted issuer stock repurchases from section 16(b)'s reach since the 1930's. *See* 17 C.F.R. § 240.16a-4(d) (1938). For example, before 1991, rule 16a-4(c) provided that "[s]ecurities reacquired by or for the account of an issuer and held by it for its account shall be exempt from sections 16(a) and 16(b) during the time they are held by the issuer." *See id.* § 240.16a-4(c) (1990).

Although rule 16a-4(c) was repealed in 1991, the Commission explained that it did so because "transactions by the issuer are not subject to [s]ection 16 since the issuer is the beneficiary of the short-swing profit provision." Ownership Reps. & Trading by Officers, Dirs. & Principal Sec. Holders, 56 Fed. Reg. 7242, 7263 (Feb. 21, 1991). Indeed, it would "lead[] to the awkward result of allowing an issuer to pursue disgorgement for profits that [the beneficial owner, director, or officer] realize[s] as an approximate result of the issuer's own conduct." *LAL Fam. Corp. I*, 748 F. Supp. 3d at 191. Thus, according to the Commission, "no exemption [wa]s

---

[5] While the parties refer to various pre-*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) cases in supporting their positions, neither party has suggested that any of the Commission's regulations that could potentially affect the application of section 16(b) are invalid. This case accordingly presents no occasion to consider the matter, and we express no view therein.

24-10448               Opinion of the Court                    9

necessary." Ownership Reps. & Trading by Officers, Dirs. & Principal Sec. Holders, 56 Fed. Reg. at 7263.

Second, the Commission has explained that issuer stock repurchases are not subject to section 16(b) because they are not covered by the reporting requirements under section 16(a). Section 16(b) is closely "interrelated with the congressionally created reporting requirements of [section] 16(a)." *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 530 (9th Cir. 1981), *abrogated on other grounds by Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221 (2012). Section 16(a) "provides a mechanism for facilitating the recovery of short-swing profits" under section 16(b) "by requiring [beneficial owners, directors, or officers] to disclose any change in ownership." *Tristar Corp. v. Freitas*, 84 F.3d 550, 553 (2d Cir. 1996). For that reason, "the scope and definition of . . . beneficial owner for [section] 16(b) has been determined by reference to [section] 16(a)." *Whittaker*, 639 F.2d at 525 (collecting cases).

Because of the relationship between the reporting requirements of section 16(a) and the strict liability provisions of section 16(b), the Commission "has used its power to grant exemptions under [section] 16(b) to exclude from liability any transaction that does not fall within the reporting requirements of [section] 16(a)." *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 426 (1972). Put another way, "any event that triggers liability under [section] 16(b) must first be a reportable event under [section] 16(a)." *Strom v. United States*, 641 F.3d 1051, 1062 (9th Cir. 2011).

10                     Opinion of the Court                    24-10448

The interrelated nature of section 16(a) and section 16(b) is reflected in rule 16a-10. There, the Commission explained that "any transaction exempted from the reporting requirements of [section] 16(a)" is "exempted from" liability under "section 16(b)." 17 C.F.R. § 240.16a-10. This is important here because issuer stock repurchases—like Luminar's in December 2021—are not reportable events under the Commission's regulations, which means they are excluded from liability under section 16(b). *See* 15 U.S.C. § 78p; 17 C.F.R. §§ 240.16a-3, 240.16a-10; *see also LAL Fam. Corp. II*, 2025 WL 1479729, at *3 ("Share repurchases are now a trillion-dollar practice yearly; yet, insiders have never disclosed them. If every insider has failed to comply with [s]ection 16, it is odd that until now no one has noticed.").

Third, while rule 16a-1(a)(2) defines beneficial ownership as "a direct or indirect pecuniary interest *in* the equity securities," 17 C.F.R. § 240.16a-1(a)(2) (emphasis added), Russell does not have an interest—direct or indirect—in Luminar's repurchased shares. The repurchased shares are held by Luminar, which is a separate corporate entity.

It is "[a] basic tenet of American corporate law . . . that [a] corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, (2003); *see also Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) ("A corporation is a legal entity—a fictional person—capable of entering contracts and doing business in its own right."). "The few cases that have considered attribution of a corporation's investments" to

24-10448               Opinion of the Court                        11

a beneficial owner, director, or officer "have been limited to the specialized situation where the corporation was the investment vehicle or alter ego of the individual." *See Popkin*, 366 F. Supp. at 539–40 (collecting cases).

Here, Roth has not alleged that Luminar was Russell's investment vehicle or alter ego. That failure is fatal to his ability to attribute Luminar's corporate investments to Russell.[6] *Cf. Molinos Valle Del Cibao*, 633 F.3d at 1349 ("[T]o pierce the corporate veil—the plaintiff must prove that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." (quotation and emphasis omitted)).

## C.

Although the Commission's regulations do not allow an issuer (or a shareholder on its behalf) to recover profits realized from the issuer's repurchase of its own stock on the open market, Roth argues that the amicus brief the Commission filed in *Feder v. Frost*, 220 F.3d 29 (2d Cir. 2000), does. Roth reads the *Feder* amicus brief as taking the position that issuer stock repurchases are attributed

---

[6] Because Roth did not allege that Luminar was Russell's alter ego or investment vehicle, we leave for another day the question whether that might subject a beneficial owner, director, or officer to section 16(b) liability.

12            Opinion of the Court              24-10448

to controlling shareholders (like Russell). But, for two reasons, the *Feder* amicus brief is as unhelpful to Roth as the text of section 16(b) and the Commission's regulations.

First, Roth offers the *Feder* amicus brief as the Commission's definitive interpretation of its regulations. But, in *Kisor v. Wilkie*, 588 U.S. 558 (2019), the Supreme Court held that, before affording deference to an agency's interpretations of its regulations, courts must apply a three-step framework. *Id.* at 574–75. At the first step—the only one that matters here—courts "should not afford" deference unless, after "exhaust[ing] all the traditional tools of construction," the "regulation is genuinely ambiguous." *Id.* (quotation omitted). "[I]f the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading[.]" *Id.* at 575.

Here, at the first step, Roth conceded that the Commission's regulations were not ambiguous. Roth told the district court the Commission's rules for section 16(b) were "plain and unambiguous." As we explained above, we agree. The Commission's regulations unambiguously provide that issuer stock repurchases are not covered by section 16(b).

Second, the *Feder* amicus brief does not help Roth because it did not involve the same issue that our case presents. *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 59 (2011) (explaining that we do not defer to an agency's interpretation of its regulations when there is "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment *on the matter in question*"

(emphasis added, quotation omitted)). In *Feder*, a beneficial owner of a company purchased shares of that company through a shell company that he wholly controlled as his alter ego. 220 F.3d at 30–31. Then, the beneficial owner sold the shares through a different shell company that he also controlled as his alter ego. *Id.* at 31.

That set of facts, which the *Feder* amicus brief addressed, did not include issuer stock repurchases, which is what we have here. *See LAL Fam. Corp. II.*, 2025 WL 1479729, at *5 ("In *Feder*, we acknowledged that . . . a shareholder does . . . have at least an indirect pecuniary interest in portfolio securities . . . [b]ut portfolio securities are securities owned by an entity, *other than securities issued by the entity*."); *LAL Fam. Corp. I*, 748 F. Supp. 3d at 194 ("*Feder*, however, did not involve the fact pattern presented here of an *issuer*—as opposed to some other company controlled by the *insider*—allegedly having executed the matching short-swing trades."). Put simply, the Commission didn't opine on the question we have in this case, and thus, we owe the *Feder* amicus brief no deference. *See Talk Am.*, 564 U.S. at 59.

## IV.

For these reasons, we join every other federal court that has addressed Roth's claim in holding that section 16(b) does not allow the issuer (or a shareholder on its behalf) to recover profits realized by a beneficial owner, director, or officer from the issuer's repurchase of its own stock on the open market. We affirm the dismissal of Roth's complaint.

**AFFIRMED.**